UNITED PACIFIC INSURANCE
COMPANY, Relator,

v.

The Honorable Antonio A. ZARDENET-
TA, Respondent.

No. 04–83–00444–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 20, 1983.

Thomas H. Crofts, Jr., Groce, Locke &
Hebdon, San Antonio, for relator.

Jack Latson, Flahive & Ogden, Austin, for respondent.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

United Pacific Insurance Company, Relator, seeks the issuance of a Writ of Mandamus compelling Judge Antonio A. Zardenetta, Respondent, to order the disqualification of attorney Jack Latson and the law firm of Flahive and Ogden in a suit against Relator that is presently pending in the 111th District Court of Webb County. Latson and the firm of Flahive and Ogden are presently the attorneys of record for plaintiff, Josephine Saba Harfoush in the Webb County action, styled Josephine Saba Harfoush, Individually, as Guardian of Cale Joseph Harfoush a minor, and as Administratrix of the Estate of Joseph Said Harfoush v. United Pacific Insurance Company.

The underlying pending suit originally arose out of a fatal automobile accident involving plaintiff's decedent which occurred on March 29, 1980, in Medina County. A suit was filed on behalf of plaintiff Josephine Saba Harfoush and Cale Joseph Harfoush seeking worker's compensation death benefits. That lawsuit ultimately resulted in an Agreed Judgment and Settlement Agreement.

Thereafter, a claim for uninsured motorist benefits was made for bodily injuries sustained as well as for property damage to the vehicle decedent was driving at the time of the accident. The claim initially took the form of a demand letter dated July 6, 1981 from Jack Latson to Jill Morgan of Planet Insurance Company. A lawsuit was subsequently filed by plaintiff against Planet Insurance Company ("Planet") and Bidal Corona.

Planet Insurance Company is the sister company of Relator and both companies are part of Reliance Insurance Company. Corona is the other party involved in the accident and was uninsured at the time of the accident.

Prior to Planet filing an answer to the suit, Relator tendered to plaintiff the policy limit of $25,000 in satisfaction of all liability under the bodily injury coverage of the uninsured motorist coverage. This sum was twice refused by plaintiff's attorney Latson.

Latson returned the tendered checks to Relator and demanded an additional $10,000, the policy limit for property damage. Because the vehicle decedent was driving at the time of the accident was owned by decedent's employer, the $10,000 was never paid to plaintiff. Plaintiff eventually accepted the $25,000.

After accepting the $25,000 paid by Relator for the bodily injury coverage, plaintiff's petition was amended to assert a claim for only the $10,000 limit for property damage under the uninsured motorist coverage. Moreover plaintiff now asserted a claim for damages based on allegations of fraud and/or intentional infliction of emotional distress as well as treble damages for Deceptive Trade Practices Act (DTPA) violations in connection with the settlement of the uninsured motorist claim.

A third amended petition was subsequently filed by plaintiff on August 6, 1982 in which Relator was retained as a defendant and Planet and Corona were dropped. Plaintiff's allegations in the latest pleading include those set out in plaintiff's second amended petition, except that recovery is no longer sought for property damage to the vehicle driven by decedent. Relator responded with a counterclaim for attorney's fees, urging that the DTPA allegation was groundless and brought in bad faith for purposes of harassment. The trial court subsequently ordered plaintiff's DTPA allegation stricken.

The record before us discloses a sixth amended petition filed by plaintiff which essentially parallels the third amended petition.

The posture of plaintiff's latest petition reflects reliance upon a theory of actionable fraud in which misrepresentations were allegedly made to plaintiff (Mrs. Harfoush)

about facts and circumstances surrounding the accident in which decedent was killed. Plaintiff alleges certain misrepresentations were made by Relator's employee, who was supervising the investigation of the accident, to her insurance agent processing the claim. Specifically, plaintiff alleges that her agent was advised by an employee of Relator that at the time of the accident her husband, the decedent, was traveling at an excessive speed and that he may have been under the influence of alcohol. Plaintiff contends that the alleged misrepresentations caused her to sustain damages in (1) necessitating the employment of Latson's law firm and the payment of a contingent fee payable out of the uninsured motorist benefits and (2) physical pain, mental anguish and embarrassment.

The record discloses at least two motions to disqualify plaintiff's attorneys of record, an order disqualifying attorney Latson, an order rescinding the order disqualifying Latson and numerous other motions seeking to reconsider the trial court's position.

The first motion to disqualify was filed on April 29, 1982 by defendants Corona and Planet, in which it was alleged that Latson was a person with knowledge of facts relevant to plaintiff's claim as set forth in plaintiff's amended petition relating to the alleged bad faith of defendant and the handling of both of plaintiff's insurance claims. Defendants further alleged that because of Latson's knowledge of the circumstances surrounding both of the claims Latson was a potential defense witness. This motion was granted by the trial court and an order was entered on September 14, 1982 disqualifying Latson as plaintiff's attorney of record. The law firm of Flahive and Ogden was, however, not disqualified. The order of disqualification specifically was predicated upon the applicability of Disciplinary Rules 5–101 and 5–102.[1]

In response to the third amended petition filed by plaintiff and a motion to reconsider the order of disqualification, the trial court on September 14, 1982, rescinded the order disqualifying Latson reasoning that Latson as a witness possessed no knowledge of relevant facts.[2]

The second motion to disqualify was filed on August 17, 1983, in which Relator reurged the materiality of Latson's testimony.

Between the period of time from September 14, 1982, when the order disqualifying Latson was rescinded until August 17, 1983, when Relator filed its second motion to disqualify, plaintiff's petition was amended three additional times. In response to the various amended petitions Relator amended its answer twice. In its third and latest answer Relator alleges that the Deceptive Trade Practices violation urged by plaintiff is groundless and brought in bad faith. Attorney fees are sought by Relator as reasonable and necessary expenses of defending against these allegations. Relator raises the defense of accord and satisfaction arising out of a settlement agreement and release executed during a period of time when attorney Latson and his law firm were representing plaintiff in a claim for Worker's Compensation benefits accruing as a result of decedent's death. Relator also alleges that any misunderstanding regarding the release executed by plaintiff is attributable to the negligence of Latson and his law firm in failing to advise plaintiff with regard to the effect of the release.

Other defenses not material to the disqualification of Latson and his law firm are also urged.

The trial court's pretrial order specifically recognizes that there are facts to be litigated which directly involve the testimony of Latson or members of his law firm, to wit;

---

1. The Supreme Court of Texas, Rules Governing the State Bar of Texas, Article 12, § 8, Disciplinary Rules, DR 5–101, DR5–102.

2. In a memorandum filed by Latson's firm on behalf of the plaintiff in support of the motion to reconsider the disqualification of Latson, a member of Latson's law firm as an attorney of record, admits that plaintiff has amended her petition in an attempt to eliminate any cause of action to which Latson could be a witness. The same was verified during oral arguments at the submission of this cause.

## VIII

### FACTS TO BE LITIGATED

\* \* \* \* \* \*

12. Whether Plaintiff's filing of this suit to recover for fraud committed upon her constitutes 'bad faith' or 'harassment.'

\* \* \* \* \* \*

16. Whether or not the release executed by the Plaintiff in the Worker's Compensation lawsuit constitutes a bar to the present suit.

17. Whether or not there has been an accord and satisfaction based upon Plaintiff's acceptance of $45,000.00 in settlement of her uninsured motorist claim.

\* \* \* \* \* \*

19. Whether or not Plaintiff's misunderstanding with regard to the entity which she was releasing by signing the settlement agreement in the Worker's Compensation case, as well as the effect thereof, was solely the result of the negligence of her attorneys in failing to properly investigate same and advise Mrs. Harfoush of the legal effect of the release and judgment in the Worker's Compensation case.

20. Whether Plaintiff's Deceptive Trade Practices claims are brought in bad faith and for the purpose of harassment.

■ The narrow question presented for our review is whether the trial court abused its discretion in refusing to order the disqualification of plaintiff's attorney and his law firm after it was brought to its attention that Latson may be called as a material witness at the time of trial. We hold that such refusal, under the facts presented, constitutes a clear abuse of discretion.

In support of our holding an examination of certain disciplinary rules and ethical considerations promulgated by the Texas Supreme Court is in order.

Disciplinary Rule 5–102 of the Rules Governing the State Bar of Texas as promulgated by the Supreme Court of Texas provides:

A. If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).[3]

B. If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

The ethical underpinning of the rule is embodied in Ethical Consideration 5–9, which provides:

If a lawyer is both counsel and witness, he becomes more easily impeachable for interests and thus may be a less effective witness. Conversely, the opposing coun-

---

**3.** Disciplinary Rule 5–101 provides:

A. Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

B. A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

1. If the testimony will relate solely to an uncontested matter.

2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

3. If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

4. As to any matter if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

sel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of advocate and witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

State Bar of Texas, Ethical Consideration on Code of Professional Responsibility, EC 5–9 (1972).

The application of DR 5–102(B) becomes immediately apparent since Relator has designated Latson as one of its witnesses and the trial court has recognized this fact in its pretrial order.

■ We recognize that a mere announcement by an adversary of his intention to call opposing counsel as a witness is insufficient to orchestrate counsel's disqualification. *See Connell v. Clairol, Inc.,* 440 F.Supp. 17, 18 (n. 1) (N.D.Ga.1977). If this were not so, such a device might often be employed as a purely tactical maneuver. *See U.S. ex rel. Sheldon El. Co. v. Blackhawk Heating & Plumbing,* 423 F.Supp. 486 (S.D.N.Y.1976); *Connell v. Clairol, supra.*

■ Such concern for potential abuse is allayed to a great extent when movant demonstrates a genuine need for the attorney's testimony. The existence of such a need is satisfied when it is clear that the testimony bears on what would be a viable legal defense to the claim in question. *Connell v. Clairol, supra.*

■ Since Relator's defense of accord and satisfaction evidenced by the execution of a release, if established, would bar recovery, Latson's testimony becomes clearly material. We believe that Relator has demonstrated a genuine need for Latson's testimony as potential rebuttal testimony. We are unimpressed by the efforts made by plaintiff's attorney to eliminate, at his client's expense, viable causes of action in order to justify remaining in the case. The application of 5–102(B) may not be waived by the client. *See Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.,* 441 F.Supp. 1064, 1068 (N.D.Tex.1977). Nor do we think that the rule should be circumvented at the expense of the client.

When the client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility clash "[T]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount ... " and "[The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of the judicial process." *Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2d Cir.1975); *see also Comden v. Superior Court of Los Angeles County,* 20 Cal.3d 906, 576 P.2d 971, 145 Cal.Rptr. 9 (1978), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652.

■ When it becomes apparent to trial counsel that the possibility exists that his continued representation of his client *may* fall within the prohibition of Rules 5–102(A) or 5–102(B) because he or a member of his firm ought to testify on behalf of such client at trial or as a witness other than on behalf of his client and his testimony is or *may* be prejudicial to his client, counsel should resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel. If counsel fails to voluntarily withdraw as trial counsel in such a situation the trial court is vested with broad discretion to order withdrawal.

■ Mandamus will not lie to control discretion of a court or to compel its exercise in a particular manner except in the rare instance when the facts command discretion be exercised in but one way and that discretion has clearly been abused. *State Bar of Texas v. Heard,* 603 S.W.2d 829 (Tex.1980); *State v. Sewell,* 487 S.W.2d 716 (Tex.1972); *Houlihan v. State,* 579 S.W.2d 213 (Tex.Cr. App.1979); *State v. James,* 494 S.W.2d 956 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *Hereford v. Farrar,* 469 S.W.2d 16 (Tex.Civ.App.—Austin 1971, writ ref'd n.r. e.); *Cash v. City of Houston,* 426 S.W.2d

624 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

■ We agree with the position taken by the Florida Supreme Court that the Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character since they state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. FLA. STAT.ANN. Code of Professional Responsibility, (West 1983); *See Draganescu v. First National Bank Hollywood,* 502 F.2d 550 (5th Cir.1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86; ABA Code of Professional Responsibility (1975) (preliminary statement).[4]

We cannot agree with plaintiff's argument that the trial court did not have a clear duty to disqualify attorney Latson because it properly decided that Latson would not be an appropriate witness. The trial court's pretrial order dispells plaintiff's contention in the clearest terms. The issues as framed recognize the possibility and likelihood of Latson's testimony as a rebuttal witness. His name appears in the pretrial order and has been approved as a defense witness to be called during trial. It is immaterial that the trial court considered Latson's testimony as unnecessary and irrelevant to plaintiff's cause of action as framed. Rule 5–102 does not solely address the plaintiff's case.

Relator's application for Writ of Mandamus is granted and the Respondent is instructed to enter its order disqualifying Jack Latson and members of the law firm of Flahive and Ogden from representing the plaintiff in open court in Cause No. 32,997 presently pending on the docket of the 111th Judicial District Court of Webb County. It is so ordered.

---

4. In the absence of another adequate remedy, mandamus will lie when a district court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. In these instances the trial court's discretion is not involved and its failure to comply with the mandatory provision renders its order or judgment void. *State Bar of Texas v. Heard, supra,* 603 S.W.2d at 834.