**PETROLEUM WHOLESALE, INC., Relator,**

v.

**John McClellan MARSHALL, Judge, 14th Judicial District Court of Dallas County, Texas, Respondent.**

No. 05–88–00078–CV.

Court of Appeals of Texas, Dallas.

May 23, 1988.

R. Brent Cooper, John A. Scully, James Gregory Marks, Dallas, for relator.

Frank L. Branson, Paul N. Gold, George (Tex) Quesada, Dallas, for respondent.

Before WHITHAM, McCLUNG and STEWART, JJ.

STEWART, Justice.

Relator Petroleum Wholesale, Inc. ("Petroleum"), seeks a writ of mandamus to compel the Honorable John McClellan Marshall, Judge of the 14th Judicial District Court of Dallas County, Texas, to vacate an order disqualifying the entire law firm of Cowles & Thompson, attorneys at law, from representing it in certain pending litigation. We granted Petroleum's motion for leave to file its petition for writ of mandamus,[1] the parties have briefed the

---

1. We have previously recognized a petition for    writ of mandamus as an appropriate method to

issues, and we have heard oral argument. For the reasons given below, we deny Petroleum's petition for writ of mandamus.

Bertha Faye Marsden sued Petroleum, along with other defendants, on a wrongful death claim. She retained the law firm of Frank L. Branson, P.C. ("Branson"), attorneys at law, to represent her. Her action, styled *Marsden v. Petroleum Wholesale, Inc., et al.*, was docketed in the 14th Judicial District Court under cause number 87–11466. Petroleum retained Cowles & Thompson to represent it, and, in due course, Cowles & Thompson filed a general denial on behalf of Petroleum. During this entire time, Branson employed Scott M. Lewis, a licensed attorney at law, as an associate. There is no dispute that, while at Branson, Lewis did not personally work on the Marsden case but did participate in confidential discussions concerning the Marsden litigation, Branson's strategy therein, the strengths and weaknesses of the case, and the potential for settlement negotiations. After Petroleum filed its general denial, however, Lewis started negotiating with Cowles & Thompson for employment there. About five weeks after Cowles & Thompson had appeared in the Marsden litigation on behalf of Petroleum, Lewis accepted a position with Cowles & Thompson. There is no dispute that Lewis personally is disqualified from any representation of Petroleum in the Marsden litigation.

About a week after Lewis started work at his new firm, Branson moved to disqualify the entire firm of Cowles & Thompson from representing Petroleum. The trial court conducted a two-day hearing. Cowles & Thompson presented evidence that it had effectively isolated Lewis within the firm from contact with any other attorney handling the Marsden litigation, by taking the steps described below.

Cowles & Thompson removed the Marsden files from the central file room and kept them under lock and key in their own storage room; only the lead counsel for the Marsden case had access to the key. Cowles & Thompson also removed the files of any other matter pending between it and Branson, as Cowles & Thompson's adversary counsel, to the locked storage room. In all, there were some twenty-two such cases pending in which Cowles & Thompson represented a defendant being sued by a plaintiff that Branson represented (the "Branson cases"). Lewis was instructed not to discuss the Marsden case, or any of the other Branson cases, with anyone else at Cowles & Thompson. Cowles & Thompson instructed all its shareholder attorneys, its associate attorneys, and its support staff that no one was even to mention any of the Branson cases in Lewis' presence; if Lewis by chance overheard any discussion of a Branson case, he was to make his presence known to the discussants immediately, who were then to cease their conversation. Any violation would result in the violator's termination from Cowles & Thompson. Finally, everyone, from the senior attorneys to the support staff, was instructed not to leave any part of the files of any Branson case unattended on desks or other places where a casual passerby might happen upon them. Cowles & Thompson stressed that these enumerated procedures were established and in place before Lewis actually joined the law firm, so that Lewis never had an opportunity to be exposed to any activity within that firm concerning the Branson cases.

Cowles & Thompson vigorously contends that it implemented an effective screening device that rebuts any presumption of shared confidences implicit in Disciplinary Rule 4–101(B) under Canon 4 and that refutes any appearance of impropriety under Canon 9 of the Texas Code of Professional Responsibility.[2] It further argues that, when the trial court declined to accept its defense that it had effectively screened

---

review a trial court's action on a motion to disqualify. *See Gilbert McClure Enterprises v. Burnett*, 735 S.W.2d 309, 310–11 (Tex.App.—Dallas 1987, orig. proceeding).

2. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. X, sec. 9 (Code of Professional Responsibility) (Vernon 1973 & Vernon Supp.1988) (hereinafter cited as Texas Code of Professional Responsibility).

Lewis from sharing any of Marsden's confidences with the other members of the firm, the trial court ruled, in legal effect, that an irrebuttable presumption exists that there will be disclosure of confidential communications between a disqualified lawyer and other members of his new firm. It contends that this holding is contrary to Texas case law, to the Texas Rules of Professional Conduct, to federal case law, and to the law of our sister states. Thus, it asserts that, by refusing even to consider the possibility of constructing an effective screening device under the facts of this case, the trial court abused its discretion.

■ Cowles & Thompson maintains that there are two issues for this Court to resolve, and it frames them thusly: (1) whether Texas law authorizes the use of a "Chinese wall" to avoid vicarious disqualification of a large law firm employing a disqualified lawyer; and (2) whether Cowles & Thompson, as counsel for Petroleum, has established an effective "Chinese wall." A "Chinese wall" is a device erected by a law firm intended to "quarantine" a new member with confidential information received from an adversary of one of the firm's clients. Among the factors that other courts have considered in determining the efficacy of such a quarantine are: (1) the size of the firm; (2) the extent of departmentalization within the firm; (3) prohibitions against discussion of the action with the new member; and (4) exclusion of the new member from relevant files, participation in the action, and sharing in firm earnings from the action. *Manning v. Fort Deposit Bank*, 619 F.Supp. 1327, 1329 (W.D.Tenn.1985), *appeals dism'd*, 798 F.2d 469 & 470 (6th Cir.1986).

Chinese walls are often used to screen ex-government officials and attorneys who wish to move into private practice. The policy underlying the use of the screen in that situation is to ensure government agencies a constant supply of well-qualified attorneys, who can be confident that they will be employable after their government service is finished. *Amoco Chemicals Corp. v. MacArthur*, 568 F.Supp. 42, 47 (N.D.Ga.1983). There is no doubt that Chinese walls are accepted in some jurisdictions and in some situations. The functions of this device are to rebut the presumption of shared confidences arising under Canon 4 between an attorney and the other members of his firm and to reduce or eliminate the appearance of impropriety prohibited by Canon 9. Thus, we must determine whether Texas law authorizes use of a Chinese wall under our facts, where an attorney has actual knowledge of a former client's confidences concerning a particular case and his new firm is representing his former client's adversary in the same suit.

The trial court relied on Canon 9 as one of its grounds for disqualifying Cowles & Thompson. We now address the propriety of that ruling. Under Canon 9, to determine whether the challenged lawyer or firm has avoided "even the appearance of professional impropriety", movant for disqualification must show that:

> ... there is a reasonable possibility of the occurrence of [a] "specifically identifiable appearance of improper conduct" and that the likelihood of public suspicion or obloquy outweighs the social interest" in obtaining counsel of one's choice.

*In Re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1345 (5th Cir. 1981) (cites omitted). Violations of other canons may be used to fulfill the requirement of a specific impropriety. *Id.* Therefore, we must determine whether Cowles & Thompson's representation of Petroleum would violate some Canon other than Canon 9. Branson argues that such representation would violate Canon 4; Cowles & Thompson argues that an effective Chinese wall avoids violation of Canon 4.

This case appears to be one of first impression for Texas state courts. The only opinion from a Texas state court that Branson brings to our attention is *Dillard v. Berryman*, 683 S.W.2d 13 (Tex.App.—Fort Worth 1984, no writ). Relying on Canon 9, the *Dillard* Court disqualified an entire law firm from defending a client in a civil assault case because one attorney, who was district attorney before he joined the firm, had had confidential conversations

with the plaintiff when he had sought criminal prosecution for the assault. Petroleum maintains that *Dillard* is distinguishable, however, because, in that case, the disqualified law firm had not even attempted to construct a Chinese wall around the attorney who was individually disqualified, thereby negating or reducing any appearance of impropriety.

Petroleum relies on a federal district court decision in *Lemaire v. Texaco, Inc.,* 496 F.Supp. 1308 (E.D.Tex.1980), *appeal dism'd,* 640 F.2d 382 (5th Cir.1981), for its position that Texas case law permits a "Chinese wall" as a device by which an entire law firm can avoid the harsh result of vicarious disqualification when it laterally hires an attorney who is personally disqualified from representing a client of that firm. We note that we receive decisions from our sister federal courts with respectful consideration, although (with the exception of the Supreme Court of the United States on questions of federal law) such decisions are in no way binding upon us. *Barstow v. State,* 742 S.W.2d 495, 501 n. 2 (Tex.App.—Austin 1987, no writ).

In *Lemaire,* a lawyer representing an oil company as defendant in a complex commercial suit changed law firms and began working for the firm representing the plaintiffs in the same suit. The court found that, before accepting the new position, the lawyer "went to great lengths to insure that he would have no connection with any facet of this lawsuit." 496 F.Supp. at 1309. The lawyer made certain that he would receive no part of any fees collected in the case and that he would not share in its expenses; he refused to discuss the underlying litigation with any member of his new firm and testified that he had no knowledge of the status of the case; and he assured the court that his nonparticipation would continue to be strictly observed. *Id.* The testimony also showed that there was no other firm in the area that was qualified or even willing to take on, for the plaintiff, litigation of the magnitude involved. *Id.* Citing *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186 (7th Cir.1979) (en banc), and *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979), the trial court held that the presumption of shared confidences between the disqualified lawyer and other members of his new firm is rebuttable; that the presumption was clearly rebutted under the evidence; and that a Canon 9 challenge to plaintiffs' counsel's continued representation was too weak a basis for their disqualification, because any appearance of impropriety was greatly outweighed by the plaintiffs' right to have counsel of their choice.

We are left with one Texas state court's decision (strenuously urged by Marsden) that Canon 9, standing alone, suffices to disqualify all members of a challenged attorney's new firm from representing movant's adversary when the challenged attorney's personal disqualification is based on actual knowledge of movant's confidences, and one Texas federal district court's decision (strenuously urged by Petroleum) that an effective Chinese wall reduces the appearance of impropriety and under the facts of that case plaintiffs' right to counsel of their choice greatly outweighed the appearance of impropriety prohibited by Canon 9. Clearly, more analysis is needed.

Branson argues that the *Lemaire* decision is not authoritative because it was dismissed on appeal, has never been cited by another Fifth Circuit or Texas case, and was implicitly overruled by a later Fifth Circuit decision in *In Re Corrugated Container Anti–Trust Litigation,* 659 F.2d 1341 (5th Cir.1981). However, we note that *In Re Corrugated Container* dealt with the presumption of shared confidences between the attorneys who personally handled the aggrieved client's case and the other members of their firm at the time of that representation. The court held that this presumption applied in that case even though the partnership was later dissolved. Hence, we disagree that *In Re Corrugated Container* impliedly overruled the *Lemaire* decision because the latter is distinguishable on its facts. *Lemaire* dealt with the presumption of shared confidences between an attorney who personally handled an aggrieved client's case and the other

members of his *new* firm, not the other members of the firm of which he was a member at the time he represented the aggrieved client. In addition, *In Re Corrugated Container* did not involve a Chinese Wall. However, we do recognize that the *Lemaire* court had to weigh the additional factor of there being no other local counsel available to plaintiff in determining whether plaintiffs' right to counsel outweighed any appearance of impropriety. This factor is not present in our case.

Next Petroleum contends that the Texas Rules of Professional Conduct allow the use of a Chinese wall. However, Petroleum relies on the provisions of the *proposed* Texas Rules which will be submitted to State Bar members in a referendum on November 1, 1988. We hold that the trial court did not abuse its discretion in refusing to consider the proposed rules because they are not yet in effect. To the contrary, the trial judge was well within his discretion in relying on current rules and in fact had a duty to apply the rules of professional conduct as written. *Bert Wheeler's, Inc. v. Ruffino*, 666 S.W.2d 510, 513 (Tex. App.—Houston [1st Dist.] 1983, orig. proceeding).

Petroleum also cites *Kesselhaut v. United States*, 214 Ct.Cl. 124, 555 F.2d 791, 793 (1977) (per curiam), in support of its position that, if no actual wrongdoing has occurred, the erection of a Chinese wall is permissible. It is true that the *Kesselhaut* Court acknowledged that the disqualification of an entire law firm is:

> entirely too harsh and should be mitigated by appropriate screening such as we now have here, when truly unethical conduct has not taken place and the matter is merely one of the superficial appearance of evil, which a knowledge of the facts will dissipate.

555 F.2d at 793. The facts, however, before the *Kesselhaut* Court were altogether different from those now before us. In *Kesselhaut*, the individual attorney was personally disqualified on the basis of imputed knowledge gained as a general counsel for the Federal Housing Administration. After his retirement from that agen-

cy, he worked, part-time, for a law firm representing certain other attorneys who had done legal work for the Federal Housing Administration and who, as plaintiffs, were urging a claim for attorneys' fees that the administration disputed. Thus, the grounds for disqualifying the firm involved double imputation: imputing to members of the firm the imputed knowledge of the individual attorney. The court held that under those facts the screening procedure used by the firm was sufficient to avoid disqualification of the other members of the firm. In short, *Kesselhaut* did not involve an attorney whose personal disqualification was based on actual knowledge of a former client's confidences; hence, it is distinguishable on its facts from our case.

We note that the Fifth Circuit has refused even to apply the presumption of shared confidences to disqualify new partners of an attorney who is *vicariously* disqualified through his former partners representing certain clients. *American Can Company v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir.1971); *accord*, State Bar of Texas, Comm'n on Interpretation of the Canons of Ethics, Op. 453, *reported at* 51 TEX.B.J. 293 (1988). The court in the *Citrus Feed Co.* case rejected the double imputation theory, but it expressly declined to determine whether the new partners would have been disqualified if the individual attorney's disqualification had been based on actual knowledge rather than imputed knowledge, which is precisely the situation before this Court.

Two presumptions give rise to the doctrine of vicarious disqualification under Canon 4. The first is an irrebuttable presumption that a client gives confidential information to an attorney actively handling the client's case. *In Re Corrugated Container Litigation*, 659 F.2d at 1347. The second is that an attorney who obtains such confidences shares them with other members of the attorney's firm, because of the interplay among lawyers who practice together. *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir.1979) (per curiam), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). In other words, under

the second presumption the actual knowledge of the individual attorney is imputed to the other firm members. In the case at bar, Cowles & Thompson acknowledges that confidential information concerning the Marsden litigation had actually been given to Lewis; therefore the second presumption is not necessary as a basis for Lewis' disqualification, and he is disqualified based on his actual knowledge rather than his imputed knowledge. Thus, we do not have a double imputation situation before us. Cowles & Thompson argues, however, that its construction of a Chinese wall successfully rebuts the second presumption as it relates to Lewis and his new firm: that Lewis, admittedly knowing certain of Marsden's confidences, will not be able to share those confidences with his present fellow lawyers. We disagree.

There is no dispute that Lewis participated in confidential discussions, while employed at Branson, concerning the Marsden litigation, even if Lewis personally did not directly work on that litigation. The circumstances of Lewis' employment with Branson were similar to those described by another court:

> [I]t was the common and established practice for the [seven] members of that firm [that the individually disqualified attorney had left] to discuss, within the office, and particularly at lunch, the facts and merits of the various legal matters being handled by them individually.

*EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1461 (Fed.Cir.1984) ("Chinese wall" held ineffective to rebut presumption of disqualified attorney's sharing of former client's confidences with other firm members).

■ We have carefully considered the other case authority relied on by Cowles & Thompson. Many of the cited cases can be distinguished on their facts or on the differences in the applicable local law. Although the *Lemaire* case has similar facts, we decline to follow its conclusion that the presumption of shared confidences between a private attorney with actual knowledge and other members of his new firm is rebuttable. To the contrary, we hold that the

erection of a Chinese wall will not rebut the presumption of shared confidences when an attorney in private practice has actual knowledge of a former client's confidences in relation to a particular suit and he thereafter undertakes employment with a firm representing an adversary of the former client in that same suit. Accordingly, we further hold that to allow Cowles & Thompson to represent Petroleum in this case would be a violation of Canon 4. Therefore, the specifically identifiable impropriety required by the first prong of the Canon 9 test has been met.

■ We turn now to the second prong of the Canon 9 test in which we must determine whether the likelihood of public suspicion of the legal profession outweighs the social interest of Cowles & Thompson's continued representation of Petroleum. We first note that, contrary to *Lemaire,* Petroleum does not contend that no substitute counsel is available, a factor which may have tipped the scales in favor of refusing to disqualify plaintiffs' counsel in *Lemaire.* However, we must still decide whether Cowles & Thompson's erection of a Chinese wall reduces the appearance of impropriety to the extent that the likelihood of public suspicion is outweighed by Petroleum's social interest in retaining counsel of its choice. We conclude that when an attorney accepts employment with a firm representing an adversary of his former client in the same suit, with actual knowledge of his or her former client's confidences in that suit, such an appearance of impropriety arises that not even an effective Chinese Wall can allay public suspicion of the legal profession, especially in a case involving only private attorneys.

In *Kesselhaut,* the court found that no "truly unethical conduct" had occurred and that "a knowledge of the facts [would] dissipate" "the superficial appearance of evil." 555 F.2d at 793. But the public could easily acquire such a knowledge of the facts in that case (*i.e.,* that the attorney who was personally disqualified had been employed with a governmental agency in a supervisory capacity, without actually being involved in the day-to-day handling of

any specific case). The attorney's job responsibilities with the governmental agency would be a matter of public record. Because the individual attorney's disqualification was based on imputed knowledge, *Kesselhaut* simply did not involve any reasonable possibility that the individually disqualified attorney's actions would arouse public suspicion that an impropriety might have occurred.

In the instant case, in contrast to *Kesselhaut*, Lewis has been privy to confidences concerning the Marsden litigation. The facts available to dissipate any appearance of impropriety under Canon 9 would be only those facts establishing the efficacy of the Chinese wall, erected entirely internally within Cowles & Thompson. Those facts, however, remain solely within the collective knowledge of Cowles & Thompson's attorneys and employees. Under these circumstances, the erection of a Chinese wall does little to dissipate the public's perception of the appearance of professional impropriety, because, in the end, the public has no way of knowing whether a breach in the Chinese wall might ever occur. *See Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir.1980) (while the extent of the disqualified attorney's exposure to confidential disclosures of former client through informal discussions or general strategy conferences had admittedly not been conclusively determined, a Chinese wall was held ineffective to avoid the appearance of impropriety).

Nevertheless, Petroleum insists that no actual impropriety under Canon 4 has occurred or will occur in this case. Actual impropriety, however, is not the proper test. *See In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1344–45 (5th Cir.1981); *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir.1980).

We agree with the *Dillard* court that "it is the relationship of the attorneys to the parties and to each other that controls, not whether they have actually engaged in conduct which would create a conflict." *Dillard v. Berryman*, 683 S.W.2d at 15. As we have previously held, we have a specifically identifiable impropriety, *i.e.*, the possi-

ble violation of Canon 4's prohibition against disclosing a former client's confidences. (*See* Canon 4, Ethical Consideration 4–6 (the obligation to preserve a client's confidences continues after the termination of a lawyer's employment.)) We do not question that no actual impropriety has occurred; we conclude only that the general public has no means of any kind to verify independently the lack of any impropriety.

Petroleum next argues that, because Canon 5 explicitly compels the vicarious disqualification of an entire law firm when one of its members is personally disqualified (*see* Disciplinary Rule 5–105(D)), the absence of a similar provision in Canon 4 mandating the vicarious disqualification of a law firm means that Canon 4 permits the erection of a Chinese wall to avoid the appearance of any impropriety specifically identified under Canon 4. Our issue is not whether Canon 4 *ever* permits a Chinese wall; it is whether Canon 4 permits a Chinese wall under the specific facts of this case. We have concluded only that, *under our facts*, a Chinese wall will not rebut the presumption of shared confidences under Canon 4.

■ We hold, therefore, that when an attorney in private practice has actual knowledge of the confidences of a former client in a particular case, and he or she undertakes employment with a law firm representing a party whose interests in that identical case are adverse to that former client, the construction of a Chinese wall does not refute the appearance of professional impropriety—the possible disclosure of the former client's confidences—which is prohibited by Canon 9 of the Texas Code of Professional Responsibility. In such a case, the entire new firm must be disqualified from representing the adversary of the challenged attorney's former client. In light of this holding, we do not reach the factual question of the effectiveness of the Chinese wall which Cowles & Thompson erected.

Under our rulings, the trial court was not acting in contravention of Texas law when it declined to adopt Petroleum's Chi-

nese wall defense under the facts of this case. A writ of mandamus will issue only when "the trial court's order is so arbitrary, unreasonable, or based upon so gross and prejudicial an error of law as to establish an abuse of discretion." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). Consequently, the trial court did not abuse its discretion in disqualifying Cowles & Thompson from representing Petroleum.

Accordingly, Petroleum's petition for writ of mandamus is denied.