790 S.W.2d 55 (1990)
The INDUSTRIAL ACCIDENT BOARD OF the STATE OF TEXAS, Relator,
v.
The Honorable Carolyn H. SPEARS, Respondent.
No. 04-90-00007-CV.
Court of Appeals of Texas, San Antonio.
April 25, 1990.
*56 Lynette Phillips, Asst. Atty. Gen., Austin, for relator.
Bruce M. Miller, Bernard Wm. Fischman, Tinsman & Hauser, Gerald Shiely, Thornton, Summers, Biechlin, Dunham & Brown, Camille DuBose, Beckmann & Quirk, San Antonio, for respondent.
Before CADENA, C.J., and BUTTS and BIERY, JJ.

OPINION
PER CURIAM.
Relator, the Industrial Accident Board of the State of Texas (IAB), seeks a writ of mandamus compelling respondent, the Honorable Carolyn H. Spears,[1] to enter an order granting relator's motion to disqualify the attorney and law firm representing the real party in interest, Jesse Casias, plaintiff in the underlying case.
Plaintiff brought suit against the Industrial Accident Board to recover damages for injuries he allegedly sustained while at the IAB San Antonio office September 25, 1985, for the purpose of attending a pre-hearing conference concerning a worker's compensation claim filed by one of his co-workers. Plaintiff apparently sat on a chair that was broken and he fell over backwards. Bruce Miller and the law firm of Tinsman & Houser represent him in this tort action. Margaret Maisel, a member of the Tinsman & Houser firm since 1971, took a leave of absence from the firm to serve as chairman of the IAB and was serving in that capacity at the time of this occurrence. Her term as chairman expired nine days after the incident involving plaintiff, at which time she returned to work at the law firm. The law firm assigned her to work on plaintiff's worker's compensation claim which arose out of this incident, but she did not participate in the case involving his tort action against the IAB.
Plaintiff's original petition was filed November 12, 1986. Trial apparently was set for January 8, 1990. On January 4, 1990, following a hearing, the trial court overruled relator's motion to disqualify Mr. Miller and the Tinsman & Houser law firm.
In its answer to the tort action, relator raised the defense of lack of the notice required to bring a suit under the Texas Tort Claims Act. Since relator denied receiving timely written notice, the question of actual notice became a substantive issue in the case. Relator claims that it was not until after plaintiff took the deposition of the IAB's executive director in August, 1989, that it became aware that a conflict existed between the IAB employees' testimony regarding actual notice. The Texas Tort Claims Act requires the plaintiff to notify the state agency of the place the *57 incident occurred as well as of any resulting injury within six months of the incident. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101 (Vernon 1986).
Relator argues that Tinsman & Houser's representation of plaintiff violates legal ethical standards because representation of plaintiff entails (1) representing a client whose interests are adverse to a former client (the IAB); (2) representing a client in whose case the attorney is a material fact witness; and (3) representing a client in a case in which the attorney had previously served as relator's attorney.
The Disciplinary Rules under the prior Code of Professional Responsibility were held to be mandatory in character because they stated "the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." United Pac. Ins. Co. v. Zardenetta, 661 S.W.2d 244, 249 (Tex.App.San Antonio 1983, no writ). The Texas Disciplinary Rules of Professional Conduct, which became effective January 1, 1990,[2] "are imperatives, cast in the terms `shall' or `shall not.'" They "define proper conduct for purposes of professional discipline." SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. X, § 9 (Rules of Professional Conduct) Preamble § 10.[3]

MAISEL AS FORMER LEGAL COUNSEL TO THE IAB
Rule 1.09 of the Texas Rules of Professional Conduct prohibits an attorney who has formerly represented a client in a matter from representing another person in a matter that is adverse to the former client if it is the same or a substantially related matter or if it would reasonably violate Rule 1.05. Rule 1.05 prohibits an attorney from revealing the confidences of a client or former client or to use confidential information of a client to the client's disadvantage.
An attorney or a law firm should be disqualified because of prior legal representation if the party moving for disqualification proves that an attorney-client relationship previously existed and that the factual matters involved in that representation "were so related to the facts in the pending litigation that it creates a genuine threat that" the confidences gained in the former representation will be divulged to the attorney's present client. Evidence of specific similarities must be presented. Once such proof is made, "the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney."[4]NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d 398, 400 (Tex.1989).
As chairman of the IAB, Ms. Maisel was the statutory legal advisor to the IAB. TEX.REV.CIV.STAT.ANN. art. 8307, § 2(a) (Vernon Supp.1990). The existence of the attorney-client relationship has been established.
Relator has produced evidence establishing that the factual matters involved in the prior representation are substantially related to the facts in the pending litigation and that there is a genuine threat that the prior confidences will be divulged to the new client. The issue of whether the IAB *58 received actual notice of the accident and injury is vital to the IAB's defense of lack of notice. As legal advisor, Ms. Maisel obtained knowledge of the notice issue. This clearly establishes "specific similarities" since it shows identity of factual matters.
Once relator established that Ms. Maisel had been the Board's legal advisor and that the factual matters were substantially related, the conclusive presumption arose that Ms. Maisel did know the facts. NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d at 400; Enstar Petroleum Co. v. Mancias, 773 S.W.2d 662, 664 (Tex.App.San Antonio 1989, no writ); Hoggard v. Snodgrass, 770 S.W.2d 577, 583 (Tex.App.Dallas 1989, no writ). The presumption is conclusive and irrebuttable. NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d at 400; Hoggard v. Snodgrass, 770 S.W.2d at 583; Petroleum Wholesale, Inc. v. Marshall, 751 S.W.2d 295, 299 (Tex.App.Dallas 1988, no writ). Ms. Maisel admitted that she does have actual knowledge which may be relevant to the IAB's defense of no notice. She testified that William Treacy (the IAB's executive director) telephoned her and informed her that there had been an incident but that he did not know the extent of the injuries. Since it has been shown that she has actual knowledge, the imputation of that knowledge to the law firm is presumed. Once Ms. Maisel becomes disqualified, her entire firm is disqualified. J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris, 776 S.W.2d 271, 281-82 (Tex.App.Dallas 1989, no writ); Enstar Petroleum Co. v. Mancias, 773 S.W.2d at 664; Petroleum Wholesale, Inc. v. Marshall, 751 S.W.2d at 300-01; Rule 1.09(b). Thus, relator established that there is a reasonable probability that the subsequent representation will involve either the unauthorized disclosure of confidential information or an improper use of that information to the disadvantage of the former client pursuant to Rules 1.09(a) and 1.05(a) and (b).
The former and current representations involve substantially related matters. The trial court clearly abused its discretion by refusing to disqualify the law firm.

MAISEL AS POTENTIAL MATERIAL WITNESS
The Texas Rules of Professional Conduct prohibit an attorney from accepting or continuing employment in an anticipated or pending adjudicatory proceeding if he knows or believes he is or may be a material witness. Rule 3.08(a). The rule is not applicable if the testimony relates to an uncontested issue, a matter of uncontested formality, the nature and value of legal services, the lawyer is appearing pro se as a party, or the lawyer has promptly notified opposing counsel that he expects to testify and that his disqualification would work a substantial hardship to the client. Rule 3.08(a)(1)-(5). Further, a lawyer may not continue to represent a client if he believes that he will be forced to testify adversely to his client, unless the client has given his informed consent. Rule 3.08(b). If a lawyer in the firm is prevented from accepting or continuing employment under this rule, his law firm is similarly disqualified. Rule 3.08(c). Ms. Maisel is a member of the plaintiff's law firm. If she is disqualified as a potential witness, her law firm is disqualified.
Failure to give the notice required by section 101.101 of the Texas Tort Claims Act is a defense for the government agency in a lawsuit. Relator specifically pleaded that it did not timely receive the required notice of the incident and injury. Plaintiff alleges that Ms. Maisel, while chairman of the Board, was told of the incident by one of relator's employees. Since the question of whether she knew of the injury at that time is crucial, she is a material witness.[5]See TEX.CIV.PRAC. & REM. CODE ANN. § 101.101(c) (Vernon 1986). Her testimony could establish that she was told of the incident and injury, *59 thus establishing an essential fact in her client's behalf. Conversely, were she to testify that she was never informed of the injury, her testimony would establish an essential fact adverse to her client. No consent was given by the firm's client (plaintiff) or by the former client (relator) concerning the potential conflict.
Ms. Maisel and the law firm were aware of the conflict due to her prior position with the IAB at the time they undertook to represent plaintiff in his tort claim. Ms. Maisel was representing plaintiff in a worker's compensation claim he had against his employer arising out of the incident at relator's office. She questioned Mr. Tinsman about it and another lawyer from the firm was assigned to represent plaintiff in his tort claim against relator. The law firm knew since at least 1986, when the issue of notice was raised, that Ms. Maisel was a potential material witness. It was their burden to notify relator of Ms. Maisel's involvement.
As this Court pointed out in United Pac. Ins. Co. v. Zardenetta, 661 S.W.2d at 248 (citations omitted):
When it becomes apparent to trial counsel that the possibility exists that his continued representation of his client may fall within the prohibition of Rules 5-102(A) OR 5-102(B)[6] because he or a member of his firm ought to testify on behalf of such client at trial or as a witness other than on behalf of his client and his testimony is or may be prejudicial to his client, counsel should resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel. If counsel fails to voluntarily withdraw as trial counsel in such a situation the trial court is vested with broad discretion to order withdrawal.
. . . .
When the client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility clash "[T]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount ..." and "[The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of the judicial process."
The importance of preserving the public trust in the scrupulous administration of justice and the integrity of the law requires that, under the facts of this case, we hold that the law firm of Tinsman & Houser had a duty to voluntarily withdraw as trial counsel and the trial court's refusal to order their disqualification in the absence of their voluntary withdrawal constitutes a clear abuse of discretion.

MAISEL AS FORMER GOVERNMENT REPRESENTATIVE
Rule 1.10(a) prohibits an attorney from representing "a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee" without the government agency's informed consent.
As relator's legal advisor, Ms. Maisel is presumed to have participated personally and substantially in the case. Relator never gave its consent to Ms. Maisel to represent plaintiff in the matter occurring during her tenure with the Board.

CLAIMS OF REAL PARTY IN INTEREST
Plaintiff, the real party in interest, asserts that relator has waived its claim of conflict of interest by failing to request the disqualification sooner than mere days before trial. He claims that relator had three years in which to demand the disqualification. We do not agree that relator's delay supports a finding of waiver. Turner v. Turner, 385 S.W.2d 230 (Tex.1964) does not support plaintiff's claim that the disqualification issue is waived. In that case the supreme court found that the motion for disqualification came too late and that no privileged information was elicited. Thus, there was nothing in the record to support a reversal of the judgment because of the trial court's refusal to disqualify the attorney *60 who had previously represented one of the parties. Turner v. Turner, 385 S.W.2d at 236.
The issue of no notice became apparent after Mr. Treacy's deposition. Plaintiff argues that relator knew of the conflict far enough in advance to have taken appropriate action. At the disqualification hearing, relator's counsel stated:
And that once it becomes evidentand we may be at fault, Your Honor, for not bringing this to your attention sooner. I would say that Mr. Treacy's deposition was taken in August. Ms. Phillips immediately went on maternity leave until just the first of this month.
Plaintiff claims that Ms. Phillips did not go on maternity leave for fifty days after that deposition. He relies on a letter, dated October 18, 1989, from Ms. Phillips' legal assistant which states:
Lynette Phillips will be out on maternity leave until the end of December, 1989. I have informed Ms. Phillips of your request and she will gladly look into your request when she returns to the office.
This letter does not indicate that Ms. Phillips was not on maternity leave at the time counsel stated she was.
Ms. Phillips returned to work at the end of December, 1989. Her motion to disqualify was filed and acted on by January 4, 1990. Under these circumstances, this is not an undue delay.
The real party claims that substantial hardship will result to him if his attorney is disqualified. However, this contention was not raised in the trial court and no evidence is in the record to show substantial hardship.
Plaintiff suggests that relief should be denied to relator for its failure to include certified or sworn copies of necessary documents in the petition for writ of mandamus. See Stocking v. Biery, 677 S.W.2d 792, 794 (Tex.App.San Antonio 1984, no writ); TEX.R.APP.P. 121(a)(2)(C), 121(a)(4).
The certified record before us, which includes the order denying relator's motion to disqualify and the statement of facts from the hearing on that motion, is sufficient for us to determine this petition. In Stocking, no certified copies of any instruments, other than the order itself, were tendered and no record was made of the hearing; thus this Court was unable to determine whether the trial court clearly abused its discretion.

CONCLUSION
Because the representation of the IAB by Ms. Maisel and the subsequent representation of plaintiff against relator involve substantially related matters; because Ms. Maisel may be a witness to a material fact issue; and because Ms. Maisel was a former government attorney and had no permission to represent relator's adversary, the law firm of Tinsman & Houser is disqualified to continue its representation of plaintiff in his suit against relator. The trial court abused its discretion in refusing to order the disqualification of Bruce Miller and the law firm of Tinsman & Houser. The petition for writ of mandamus is conditionally granted. Judge Spears is directed to enter the appropriate order disqualifying Mr. Miller and Tinsman & Houser.
BIERY, Justice, dissenting.
I respectfully dissent from the majority's finding of a clear abuse of discretion on the part of the trial court.
A relator seeking the vacation of an order denying a motion to disqualify has a heavier burden than a relator seeking the vacation of an order granting a motion to disqualify. J. K. and Susie L. Wadley Research v. Morris, 776 S.W.2d 271, 275 (Tex.App.Dallas 1989, no writ). To prevent a motion to disqualify counsel from being used as a dilatory tactic, trial courts must strictly adhere to an exacting standard when considering such motions. NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d 398, 399 (Tex.1989).
Having established that the attorney/client relationship once existed, the movant Industrial Accident Board then had the burden of clearly establishing that the matters involved in the pending suit are substantially related to the matters involved *61 in the former representation. NCNB Texas Nat'l Bank at 400; Arkla Energy Resources v. Jones, 762 S.W.2d 694, 695 (Tex.App.Texarkana 1988, no writ).
In the application of the "substantial relationship" rule the facts of each particular case will necessarily be determinative. See, e.g., Church of Scientology of California v. McLean, 615 F.2d 691, 693 (5th Cir.1980) (attorney for church consulted regarding zoning matter not disqualified in subsequent slander suit against church); Duncan v. Merrill Lynch, Pierce, Fenner and Smith, 646 F.2d 1020, 1033 (5th Cir. 1981) (plaintiff's attorneys not disqualified in securities fraud action against brokerage firm which attorneys had served as counsel in prior matters of litigation); B. F. Goodrich Co. v. Formosa Plastics Corp., 638 F.Supp. 1050, 1055 (S.D.Tex.1986) (attorney consulted for potential employment in patent/anti-trust litigation not disqualified from subsequent employment as counsel for opposing party); Hydril Co. v. Multiflex, Inc., 553 F.Supp. 552, 557-58 (S.D. Tex.1982) (patent/trademark attorney's longtime representation of party in areas of trade secrets, patents and trademarks not sufficiently related to the patented product which was subject of infringement suit so as to preclude representation of opposing party).
Because of the severity of the remedy of denying a party the counsel of his choice, the party seeking disqualification of his opponent's counsel must prove the substantial relationship by the preponderance of the evidence. NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d 398, 400 (Tex.1989).
In the instant case the trial court found that the IAB did not meet its burden of proving a substantial relationship. The evidence showed clearly that Mrs. Maisel's involvement in this case was that of hearing a report of the incident. As the outgoing chairman of the board with only nine days remaining in her term, Mrs. Maisel understandably had no significant interest in the matter as no claim had yet been presented, no particular consequences were attached to the event by board personnel and there is no evidence of any legal advice or consultation requested of, or given by, Mrs. Maisel with reference to the incident. Based on the facts presented to the trial court, I would hold that the trial court did not abuse its discretion in weighing the evidence and denying the motion to disqualify.
Relator's alternative ground of disqualification is that Mrs. Maisel is a witness to be called at trial and therefore both she and the law firm of Tinsman & Houser, Inc., are disqualified under former Disciplinary Rule 5-102, V.T.C.A. Government Code, Subtitle GAppendix repealed, eff. January 1, 1990 and replaced by Texas Disciplinary Rules of Professional Conduct, Rule 3.08, 778 S.W.2d p. XCIII-XCIV. Under the former Disciplinary Rule 5-101, a lawyer was enjoined from accepting employment in a litigation matter if it is "obvious that he or a lawyer in his firm ought to be called as a witness," subject to several exceptions: (1) where his testimony relates solely to an uncontested matter; (2) where the testimony relates solely to a matter of formality as to which there is likely no substantial evidence to be offered in opposition; (3) the testimony relates to the value of legal services rendered in the case or (4) it would work a "substantial hardship" on the client for the lawyer to withdraw. Under former Disciplinary Rule 5-102, a lawyer was compelled to withdraw if after commencement of the litigation it became apparent that he would likely be a witness on behalf of his client. Conversely, a lawyer was also compelled under DR 5-102(B) to withdraw if it became clear that he could be called as a witness by a party other than his client and his testimony might be prejudicial to his client. Under the new Rule 3.08 which became effective January 1, 1990, the guiding principles are much the same except that now, withdrawal is predicated on testimony relating to the establishment of an "essential fact on behalf of the lawyer's client." The final paragraph of the Comment to the new Rule 3.08 is instructive and has considerable application to the facts of this case. Rule 3.08, Comment par. 10 observes that "[A motion to disqualify] should not be used as a tactical *62 weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice" and "[A] lawyer should not seek to disqualify an opposing lawyer by unnecessarily calling that lawyer as a witness."
In this case, the relator has been represented by the same assistant attorney general from the inception of the litigation. From the documents which initiated plaintiff's claim in October 1985, the board has known of Mrs. Maisel's involvement on behalf of the plaintiff. The board as a matter of law knows that Mrs. Maisel was its chairman on the day that the incident occurred.
The sole allegation of the relator concerning Mrs. Maisel as a witness is that "Ms. Maisel has knowledge regarding whether the board did or did not receive the requisite notice, which is notice of an incident and notice of an injury." The relator never listed Mrs. Maisel as a potential witness for trial. At the hearing on the motion to disqualify on January 4, 1990, plaintiff's counsel stipulated that plaintiff would not call Mrs. Maisel as a witness. Plaintiff expressly stated that he intended to establish notice of the claim through witnesses other than Mrs. Maisel and therefore did not believe her testimony necessary to his interests. If the plaintiff believed that Mrs. Maisel's testimony was vital to the establishment of the notice issue and could not be obtained through a non-disqualified source, the law firm of Tinsman & Houser, Inc. would have no alternative but to withdraw from any representational role at trial. On the other hand, if the board believes that Mrs. Maisel's testimony will be helpful to its position, it may call her as a witness and in that event Tinsman & Houser, Inc. and its client must make a determination of whether the testimony would be adverse to the client's interests. Further, after the case had been pending for four years, the relator decided two business days prior to trial that Mrs. Maisel's knowledge, if any, had become relevant and critical to the trial of the case.
The board has failed to meet its burden to show that the testimony to be elicited from Mrs. Maisel is material to its defense as well as prejudicial to the interest of the opposing attorney's client. Stocking v. Biery, 677 S.W.2d 792, 794 (Tex.App.San Antonio 1984, no writ); White v. Culver, 695 S.W.2d 763, 765 (Tex.App.El Paso 1985, no writ). The mere announcement by an adversary of his intention to call opposing counsel as a witness is insufficient to require such counsel's disqualification. White v. Culver, 695 S.W.2d at 765.
Finally, it is well settled that a motion for disqualification of an attorney on the basis of a conflict of interest may be waived if not timely asserted. Turner v. Turner, 385 S.W.2d 230, 236 (Tex.1964); Cox v. American Cast Iron Pipe Co., 847 F.2d 725, 729 (11th Cir.1988); Redd v. Shell Oil Co., 518 F.2d 311, 315-16 (10th Cir. 1975) ("So, if [movant] had filed the motion some months prior to the date of trial it would have merited serious attention and consideration. Why he postponed the filing until the Friday before the Monday on which the trial was to commence is inadequately explained"). Here, four years elapsed before relator determined that its motion to disqualify was critical to its case. The fact that the hearing on the motion was set two business days before trial certainly could have given rise to a reasonable belief on the part of the experienced trial judge that the motion was being pursued solely for the purpose of delay.
The relator is represented by the attorney general's office which has several hundred lawyers, any number of whom could have filed the motion to disqualify in the absence of the assistant attorney general assigned to the case. Further, the leave from work which is asserted to be the cause for the delay did not begin until approximately fifty days after the deposition which relator contends to be the critical date.
For all of the reasons stated above and based upon the evidence presented to the trial judge, I would hold that the trial judge did not commit a clear abuse of discretion *63 and that the motion to disqualify was properly denied.
NOTES
[1] Judge Spears, judge of the 224th Judicial District Court of Bexar County, was sitting as judge of the 131st Judicial District Court of Bexar County, Texas.
[2] Relator relies on the Texas Code of Professional Responsibility, DR 5-102. However, the Code of Professional Responsibility was replaced with the Texas Disciplinary Rules of Professional Conduct effective January 1, 1990. "[A]ll Professional conduct on and after the effective date of this order, of all attorneys licensed to practice law in this state, [shall] be governed by the Texas Disciplinary Rules of Professional Conduct." Order of the Supreme Court, Oct. 17, 1989. Relator's motion for disqualification apparently was filed in January, 1990, and acted on by the court on January 4, 1990.
[3] The Rules Governing the State Bar of Texas will be referred to as "Rule " or the Texas Rules of Professional Conduct.
[4] Two irrebuttable presumptions exist: 1) that a client gives confidential information to an attorney who is actively handling the client's case and 2) that an attorney who obtains such confidences shares them with the other members of the attorney's law firm. Enstar Petroleum Co. v. Mancias, 773 S.W.2d 662, 664 (Tex.App.San Antonio 1989, no writ); Petroleum Wholesale, Inc. v. Marshall, 751 S.W.2d 295, 301 (Tex.App. Dallas 1988, no writ); see NCNB Texas Nat'l Bank v. Coker, 765 S.W.2d 398, 400 (Tex.1989).
[5] Neither party designated Ms. Maisel as a witness. However, at the hearing on relator's motion to disqualify, relator's attorney stipulated that plaintiff would not call Ms. Maisel to testify and would not object if the IAB called her. The IAB stated at the hearing that it did intend to call Ms. Maisel to testify regarding her knowledge of notice.
[6] See now Rule 3.08.