Judith Ellen HOGGARD, Relator,

v.

The Honorable Hugh SNODGRASS, the Honorable Leonard E. Hoffman, Jr. and the Honorable Joseph B. Morris, Respondents.

No. 05–88–01126–CV.

Court of Appeals of Texas, Dallas.

April 5, 1989.

Joseph W. Stewart, Steven R. Pierret, Arlington, and Charles M. Wilson, III, Dallas, for guardian ad litem, for Jay Wesley Hoggard, a minor.

Fred Misko and Paula Sweeney, Dallas, Thomas Black, San Antonio, and Ben L. Krage, Dallas, for Joseph Morris.

Gary W. Sibley, Dallas, for Judges Hugh Snodgrass and Leonard E. Hoffman, Jr.

Before WHITHAM, BAKER and KINKEADE, JJ.

KINKEADE, Justice.

Fred Misko, Jr., and Paula Sweeney (referred to collectively as "Misko") represented Relator Judith Hoggard (Hoggard), her husband, and her son in a negligence action involving an accident that injured Hoggard's son, Jay. Before the trial court had entered judgment in that action, Misko brought a negligence suit on behalf of Jay against Jay's mother and father, the Hoggards. Subsequently, Misko dropped Jay's father as a defendant. Hoggard moved to disqualify Misko, the trial court denied her motion, and Hoggard brought this petition for writ of mandamus. We conditionally grant Hoggard's petition for writ of mandamus to compel the trial court to vacate its order denying disqualification and to order the trial court to grant Hoggard's motion to disqualify.

On December 3, 1986, Jay, then two-and-one-half years old, fell into a neighbor's swimming pool and sustained profound brain damage. Hoggard and her husband hired Misko to represent them both individually and as next friends of Jay. Misko brought suit against Bruce Spencer, the owner of the swimming pool, and Ebby Halliday Real Estate, Inc. (Halliday), the real estate company that had the Spencer home listed for sale at the time of Jay's accident. Both Spencer and Halliday asserted that the Hoggards were comparatively negligent. Additionally, Halliday asserted a counterclaim against the Hoggards for contribution and/or indemnity. Misko tendered the defense of Halliday's counterclaim to the Hoggards' homeowners' liability insurance carrier. The carrier retained Joseph Stewart to handle the defense. The trial court appointed an attorney ad litem[1] to represent Jay; this appointment suggests that Misko represented the entire Hoggard family, subject to the attorney ad litem's protection of any interest of Jay's that was potentially in conflict with the interests of either parent.

The parties arrived at a settlement agreement; however, Jay's attorney ad litem approved the settlement only on the condition that a subsequent suit by Jay against the Hoggards go forward.[2] The

---

1. In this proceeding, the attorney ad litem represents himself to be a guardian ad litem. He is nonetheless a licensed attorney and was evidently appointed to safeguard Jay's legal rights. In the posture in which this case comes to us, the attorney ad litem has retained Misko to represent Jay. The attorney ad litem now sees his role as a guardian ad litem—not undertaking Jay's legal representation personally, but only retaining and supervising Jay's counsel. We stress, however, that his role is much more complex than would appear by the simple designation of "guardian ad litem."

2. The attorney ad litem anticipated that the Texas Supreme Court would abolish the parental immunity doctrine in *Jilani v. Jilani,* 767 S.W.2d 671 (Tex.1988); however, the supreme court

Hoggards agreed to this condition. In accordance with the settlement agreement, the trial court entered an agreed judgment on November 13, 1987.

However, on November 5, 1987, eight days before the trial court entered judgment disposing of the Hoggards' and Jay's claims against Spencer and Halliday, Misko brought a negligence suit on behalf of Jay against the Hoggards. Misko filed Jay's petition against his parents under the same cause number as Jay and the Hoggards' suit against Spencer and Halliday.

The Hoggards, through Stewart, who defended the Hoggards against Halliday's counterclaim,[3] filed a motion to disqualify Misko from representing Jay. Subsequently, Misko dropped Jay's father as a defendant. Still later, the trial court severed Jay's claim against his mother from Jay's and the Hoggards' claims against Spencer and Halliday.

On August 17, 1988, the court heard Hoggard's motion to disqualify. At the hearing, Walter Steele, a professor at the Southern Methodist University School of Law, testified as an expert witness on behalf of Misko. Steele testified that Misko's representation of Jay would not violate any ethical duties. Citing *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.), Steele said that the joint-client exception applied to the attorney-client privilege, so that any confidences given by Hoggard to Misko were not protected by the privilege. Steele further said that because Hoggard had previously given depositions regarding the accident, testimonial waiver applied, and any information given in the depositions was no longer protected by any privilege. Steele said that because Stewart defended Hoggard against Halliday's counterclaim, Misko never defended Hoggard; therefore, there was no substantial relationship between Misko's prosecution of Hoggard's suit against

Spencer and Halliday and Stewart's defense of the contributory negligence claims asserted against Hoggard. Steele said that at one time he thought that Hoggard had consented to Misko's representation of Jay, but he was not certain now because of the testimony he heard at the disqualification hearing. Steele also opined that Misko was uniquely qualified to represent Jay. Steele admitted that in order to determine whether any confidences or secrets were shared, one would have to look at Misko's files. Steele admitted that he had not looked at any of Misko's files. He further admitted that confidences and secrets could exist. Steele also stated that even if one looked at Misko's files to determine whether confidences or secrets were shared, one would be assuming that every confidence or secret was "memorialized" in Misko's files. Regarding Spencer's affirmative defense that Hoggard was contributorily negligent, Steele admitted that Misko had "to deal with it." The trial court denied Hoggard's motion to disqualify.

Hoggard contends that the trial court abused its discretion by failing to disqualify Misko because Misko's representation of Jay violates Canon 9 of the Texas Code of Professional Responsibility. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. 10, § 9 (Code of Professional Responsibility) DR 9–101 (1984) (DR 9–101).[4] Misko responds that no ethical duty is violated because (1) Hoggard consented to his representing Jay, (2) he possesses no confidences or secrets that he may use against Hoggard, and (3) he represented Hoggard and Jay jointly; consequently, Misko argues that Hoggard may not rely upon the lawyer-client privilege. TEX.R.CIV.EVID. 503(d)(5).

### REVIEWABILITY OF ORDER

◼ As a preliminary matter, in his October 5, 1988, brief, counsel for two respon-

---

only created an exception to the parental immunity doctrine that arguably does not apply here.

**3.** In the statement of facts, Stewart indicates that both Spencer and Halliday asserted counterclaims; however, the pleadings available to

us reveal that only Halliday asserted a counterclaim.

**4.** The Code is located in TEX.GOV'T CODE ANN. § 82, subt. G App. (Vernon 1988).

dents argues that the order denying Hoggard's motion to disqualify is an interlocutory order and is, therefore, nonappealable. To support his contention, counsel for respondents cites *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), and *Gleason v. Coman,* 693 S.W.2d 564 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Counsel also cites an unpublished order from this Court for the proposition that this Court has previously denied a motion for leave to file petition for writ of mandamus in a suit involving an order denying a motion to disqualify. For the reasons given below, we hold that mandamus, at least under the facts of this case, is an appropriate vehicle for reviewing the trial court's order denying Hoggard's motion to disqualify.

■ Counsel for respondents correctly cites *Firestone Tire & Rubber Co.* and *Gleason* for the proposition that a party may not *appeal* an order disposing of a motion to disqualify because such an order is an interlocutory order and not a final judgment. *Firestone Tire & Rubber Co.,* 449 U.S. at 370, 101 S.Ct. at 671; *Gleason,* 693 S.W.2d at 565. However, the fallacy of counsel's argument is that Hoggard has not appealed the trial court's order; rather, Hoggard has brought a petition for writ of mandamus, which is an original proceeding. An appellate court may issue a writ of mandamus to correct a clear abuse of discretion where the remedy by way of appeal is inadequate. *West v. Solito,* 563 S.W.2d 240, 244 (Tex.1978). A party's remedy for a trial court's clear abuse of discretion is by way of mandamus. *Gleason,* 693 S.W. 2d at 567; *see Firestone Tire & Rubber Co.,* 449 U.S. at 378 n. 13, 101 S.Ct. at 676 n. 13; *cf. Maresca v. Marks,* 362 S.W.2d 299, 301 (Tex.1962) (because discovery order was interlocutory, petitioner could not appeal it; petitioner's only remedy was by way of writ of mandamus). That a disqualification order is interlocutory may mean that it cannot be reviewed immediately on appeal, but the case before this Court is an original proceeding, not an appeal.

This Court has previously entertained petitions for writ of mandamus on orders disposing of disqualification motions. *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 295–96 n. 1 (Tex.App.—Dallas 1988, orig. proceeding); *Gilbert McClure Enterprises v. Burnett,* 735 S.W.2d 309 (Tex.App.—Dallas 1987, orig. proceeding); *cf. Hall v. Birchfield,* 718 S.W.2d 313, 322 n. 1 (Tex.App.—Texarkana 1986), *rev'd on other grounds sub nom. Birchfield v. Texarkana Memorial Hospital,* 747 S.W. 2d 361 (Tex.1987) ("The filing of a writ of mandamus would be a better procedure than awaiting the outcome of the main trial. The disqualification issue should not be allowed to interfere with the fair disposition of the suit.").

■ In *Petroleum Wholesale* and *Gilbert McClure Enterprises,* the trial courts *granted* the motions to disqualify at issue in those cases. In the present case, the trial court *denied* the motion to disqualify. Respondents appear to argue that there is a distinction between an order granting a disqualification motion and an order denying a disqualification motion. Disqualification, when granted, is a severe remedy. *See NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 399 (Tex.1989) (*NCNB*). Disqualification also results in immediate and palpable harm: it disrupts the trial court proceedings and deprives a party of the right to have counsel of one's choice. Conversely, denying a motion to disqualify might or might not result in such an immediate and palpable harm. In the instant case, for example, Misko argues that he never obtained any confidential information from Hoggard that he is now in a position to use against her; he concludes that his representation of Jay against Hoggard will not result in any real harm. Mandamus will not lie if there is no harm or if any harm is insignificant. *See* Steiner, *The Writ Stuff: Why Prayers for Mandamus Relief Go Unanswered,* THE APPELLATE ADVOCATE 8, 9 (Winter 1989).

Yet for the reasons given below, we conclude that Misko's representation of Jay against Hoggard, after Misko had represented Hoggard in substantially related, if

not the identical, litigation results in an immediate and palpable harm. The immediate and palpable harm is not the mere possibility that Misko might use confidences that he obtained while representing Hoggard against Hoggard now. Rather, the immediate and palpable harm is a clear and present violation of Canon 9, because Misko's representation of Jay creates the appearance of impropriety.

Regarding this Court's unpublished order that, according to counsel, dismissed for want of jurisdiction [5] a motion for leave to file petition for writ of mandamus to review an order disqualifying counsel, unpublished authorities are not to be cited as authority. *See* TEX.R.APP.P. 90(i). Furthermore, the order in question does not dismiss the petition for writ for want of jurisdiction; the order merely denies the motion for leave to file the petition. This Court gave no reason in its order for that denial. To infer, therefore, that the Court denied that particular motion for leave because the Court concluded that mandamus is not an appropriate vehicle by which to review the denial of a disqualification motion is to infer far too much from a naked order.

### THE MERITS

■ Disciplinary Rule 9–101 requires attorneys to avoid even the appearance of impropriety. DR 9–101. When determining whether the challenged attorney has avoided "even the appearance of impropriety," the movant for disqualification must show that there is a specifically identifiable appearance of the occurrence of improper conduct and that the likelihood of public suspicion or obloquy outweighs the social interest in obtaining counsel of one's choice. *Petroleum Wholesale, Inc.,* 751 S.W.2d at 297. The specific impropriety may be the apparent violation of another canon. *Id.* Hoggard contends that the specific impropriety involved here is Misko's possible disclosure of her confidences

in prosecuting the suit against her on Jay's behalf.

Disciplinary Rule 4–101 is entitled "Preservation of Confidences and Secrets of a Client." DR 4–101. Subsection (A) of DR 4–101 defines "confidence" as that information protected by the attorney-client evidentiary privilege. DR 4–101(A); TEX.R.CIV. EVID. 503. Subsection (A) defines "secret" as *"other information gained in the professional relationship that* the client has requested be held inviolate or the disclosure of which would be embarrassing or *would be likely to be detrimental to the client."* DR 4–101(A) (emphasis added). Ethical Consideration 4–4 emphasizes that the ethical duty is broader than the evidentiary privilege: "The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." STATE BAR OF TEXAS, ETHICAL CONSIDERATIONS ON CODE OF PROFESSIONAL RESPONSIBILITY EC 4–4 (1984); *cf. Ferguson v. Alexander,* 122 S.W.2d 1079, 1081 (Tex.Civ.App.—Dallas 1939, writ dism'd judgmt cor.) (the test is whether the attorney will be called upon, in his representation of his new client, to use against his former client any knowledge or information acquired through his representation of his former client).

■ To determine whether an attorney is presumed to have confidential information in an action against a former client, courts look at the present action to determine whether it is substantially related to the attorney's representation of his former client. *NCNB,* 765 S.W.2d at 399; *Hall,* 718 S.W.2d at 322; *Lott v. Ayres,* 611 S.W.2d 473, 474 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The moving party must prove the existence of a prior attorney-client relationship involving factual matters that are so related to the facts of the present suit that a genuine threat ex-

---

**5.** Counsel frames the argument in terms of our lacking jurisdiction to entertain an original proceeding based upon an order denying a disqualification motion. Strictly speaking, the question

is not whether we have jurisdiction as such; the question is simply whether mandamus will lie as the appropriate procedural vehicle by which we can review such an order.

ists that confidences gained by the attorney in the former representation will be used against the moving party in the present action. *NCNB*, at 399. If the court determines that the attorney's former and present representations are substantially related, the attorney is subject to disqualification. *NCNB*, at 399. *Gleason*, 693 S.W.2d at 566; *Lott*, 611 S.W.2d at 475. Attorneys may not represent conflicting interests and may not accept employment from a new client in a matter that adversely affects a former client's interest with respect to which the former client has reposed confidence in the attorney. *Lott*, 611 S.W.2d at 475.

■ The subject matter of the initial litigation was Jay's injuries sustained in Spencer's pool. At issue was whether Spencer, Halliday, and/or the Hoggards were negligent. When Misko originally represented all the Hoggards, he represented them at a time when affirmative defenses and a counterclaim arising from Hoggard's alleged contributory negligence were asserted against Hoggard. The question in the present suit is whether Hoggard's negligence, if any, contributed to Jay's injuries.

There can be no question that Hoggard had a prior attorney-client relationship with Misko and that the factual matters underlying that representation are intimately related to the factual matters underlying Misko's present representation of Jay against Hoggard. Misko argues that, when he represented the Hoggard family, he handled only their claims against Spencer and Halliday; Halliday's counterclaim against Hoggard, he contends, was turned over to Stewart to handle. Therefore, Misko concludes that his representation of Hoggard involved claims substantially unrelated to the claims now urged by Jay. This argument lacks merit; the claims were all pending in the same litigation. Misko handled all the claims, even if he handled some simply by referring them to an attorney who stood in the position of Misko's co-counsel in the case. The factual matters involved in Misko's representation of Hoggard are so substantially related to the facts involved in Misko's representation of Jay against Hoggard that Misko's representation of Jay creates a genuine threat that confidences gained by Misko in his representation of Hoggard will be used in his present representation of Jay against Hoggard. Because Hoggard has shown a substantial relationship between Misko's representation of her and Misko's representation of Jay against her, Hoggard is entitled to a conclusive presumption that she imparted confidences and secrets to Misko. *NCNB*, at 399; *Lott*, 611 S.W.2d at 474. This presumption is conclusive and irrebuttable. *NCNB*, at 399; *Petroleum Wholesale, Inc.*, 751 S.W.2d at 299; *Hall*, 718 S.W.2d at 323; *Gleason*, 693 S.W.2d at 567.

We hold that Hoggard established a substantial relationship between Misko's representation of her and his representation of Jay. Therefore, we further hold that Hoggard imparted confidences and secrets to Misko.

■ Misko argues that he has, in fact, none of Hoggard's confidences and that Hoggard cannot therefore be harmed by his representation of Jay. To this extent, Misko's argument is really that no actual violation of Canon 4 has occurred. Yet the appearance of a specific impropriety is all that is necessary. In *Petroleum Wholesale*, we acknowledged that no actual impropriety had actually taken place. *Petroleum Wholesale, Inc.*, 751 S.W.2d at 301. Nonetheless, a violation of Canon 9 does not require the *actual* violation of any other canon; it requires only the *appearance* of a specifically identifiable violation of another canon. *Id.*

The second prong of the Canon 9 test is whether the likelihood of public suspicion of the legal profession outweighs the social interest of Misko's continued representation of Jay. Should Misko represent Jay, there is a great likelihood that this would enflame the public's suspicion of the legal profession. Misko's conflict of interest is obvious; within the same action, Misko has literally gone from Judith Hoggard's champion to her nemesis. The appearance of impropriety is manifest.

Regarding the social interest in Misko's continued representation of Jay, Misko argues that Jay's attorney ad litem selected him to continue Jay's representation because he was uniquely able to provide the best possible legal representation at the least cost to Jay. The attorney ad litem argues that he doubted that he could find other counsel to represent Jay, given the possible short notice and the "very limited damages." He further argues that a new attorney would incur enormous expenses in recreating and redeveloping the personal injury file on Jay.

■ We hold that the likelihood of public suspicion of the legal profession outweighs the social interest of Misko's continued representation of Jay. Misko's conflict of interest would incite public suspicion. In contrast, regarding Misko's unique abilities, Misko, while a very capable attorney, is not the only attorney in Dallas who handles personal injury cases; we are confident that there are numerous other personal injury attorneys in Dallas who can competently handle Jay's action against his mother. Regarding the possible short notice a new attorney may have, given the circumstances, the argument fails. That an attorney new to the case might have to exert great effort to become familiar with the case in a short time is an argument that could be made in any disqualification proceeding. As for the "very limited damages," a new attorney might pray for more damages. In any case, the amount of damages that Misko now seeks from the Hoggards' homeowners liability insurance carrier is $300,000. We fail to see how anyone can say, without more, that that amount is so small that no other attorney would be interested in taking on the case. Finally, as regards the additional expenses that a new attorney would incur, we simply are not persuaded that hiring Misko is the best manner by which to avoid this expense. The appearance of impropriety is concrete, whereas Misko's and the attorney ad litem's arguments are speculative. Accordingly, we hold that Hoggard has met the second prong of the Canon 9 test.

Misko further argues that his representation of Jay would not violate any ethical duties because: (1) Hoggard consented to his representing Jay and otherwise waived the attorney-client privilege by stating what she knew in deposition testimony; (2) Misko represented Hoggard and Jay jointly; therefore, no lawyer-client privilege exists; and (3) Hoggard cannot be harmed by that representation in any case. We address each argument in turn.

■ Misko contends that Hoggard consented at the settlement hearing to his representing Jay. We quote the relevant portion of the settlement hearing below:

[Misko]: And, now, Mrs. Hoggard, because you were at home on the morning of the accident and your husband was out of state, you are fully aware that a claim, which is filed on Jay's behalf against you and Mr. Hoggard, alleging some partial responsibility on your part would be directed in some sense particularly at you?

[Hoggard]: Yes, I do.

[Misko]: And you understand that in representing Jay with [Jay's attorney ad litem] as the next friend against you and Mr. Hoggard and in arguing to a jury or advancing a claim that you were partially responsible for the accident that we would be doing that in an effort to receive some additional funds on behalf of Jay?

[Hoggard]: Yes, I do.

At the hearing on the motion to disqualify, Hoggard stated that the first time she knew Misko would represent Jay was on the date of the settlement hearing.

The disciplinary rules provide: "A lawyer may reveal: (1) Confidences and secrets with the consent of the client or clients affected, *but only after a full disclosure to them.*" DR 4–101(C)(1) (emphasis added). Although the above testimony reveals that Hoggard consented to Misko's representing Jay, the record does not affirmatively show that Hoggard gave her consent only after a full disclosure, as required by DR 4–101(C)(1). The record fails to reveal that Misko informed Hoggard of the implications of his representing Jay,

namely, that he could use all the confidences and secrets that he had learned through his representation of her against her in the subsequent action. Nothing in the record shows Misko informed Hoggard that she may not want to agree to the settlement agreement if it meant that he, Misko, could represent Jay. To the contrary, Hoggard testified that she agreed that Misko could continue to act on Jay's behalf because it was her understanding that he would negotiate a complete settlement with the insurance carrier. She stated that she did not want to have to undergo a trial in which her fitness as a mother would be subject to attack. Misko did not ask Hoggard if she wanted to negotiate a settlement wherein Misko was precluded from representing Jay. Since Misko failed to show he made a full disclosure to Hoggard, we hold that her consent was ineffective. *Cf. In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1348 (5th Cir.1981) ("[S]imple consent to adverse representation is not a consent to the use of confidential information."); *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 229 (7th Cir.1978) ("[C]onsent to the mere representation of a client with adverse interests does not amount to either consent to breach of confidential disclosure or to the use of that information against the consenting party in litigation.").

Misko also argues that he should not be disqualified because the joint-client exception to the attorney-client privilege applies. Misko's authority for the joint-client exception is *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The *Meyerland* opinion devotes three paragraphs to the discussion of the disqualification issue. *Meyerland* cites only one case as authority for its analysis, that case being *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979) (*Brennan's*). For the reasons given below, we are persuaded that *Brennan's* governs this case and that *Meyerland* is distinguishable. We discuss *Brennan's* first.

In *Brennan's*, Edward Wegmann represented the Brennan family, which owned numerous corporations. *Brennan's,* 590 F.2d at 170. On behalf of the Brennan family, Wegmann registered a trademark, which was issued in the name of Brennan's, Inc. (BI). Subsequently, the Brennan family split into two groups; BI went to one group and Brennan's Restaurants, Inc. (BRI), went to the other faction. Wegmann elected to represent the BRI faction. The BRI group used the trademark issued in the name if BI, and BI sued BRI for trademark infringement and unfair competition. BI sought to have Wegmann disqualified. BRI argued that because Wegmann previously represented BI and BRI jointly, no confidences arose; therefore, Wegmann had not violated any ethical duty.

The Fifth Circuit Court disagreed with BRI. The court said the fundamental flaw in BRI's position was a confusion between the attorney-client evidentiary privilege and the ethical duty to preserve a client's confidences. *Brennan's,* 590 F.2d at 172. The court emphasized that the ethical duty is broader than the evidentiary duty in that the ethical duty "exists without regard to the nature or source of information *or the fact that others share the knowledge.*" (Emphasis added.) The court stated that the use of the word "information" in Ethical Consideration 4–4 was particularly revealing of the drafters' intent to protect all knowledge acquired from a client and that an attorney's obligation not to misuse information acquired in the course of representation served to vindicate the trust and reliance that clients place in their attorneys. The court concluded that the conflict of interest was readily apparent and that, in this instance, the balance weighed in favor of disqualification.

In *Meyerland,* the Meyerland Community Improvement Association (MCIA), a civic organization composed of the 2,315 lot owners in the Meyerland Addition, brought suit against the sixty-two lot owners in Section 4 of the Meyerland Addition to prohibit the lot owners in Section 4 from selling their property for nonresidential uses. *Meyerland,* 700 S.W.2d at 264. The Meyerland Addition contained twenty-one sections,

and each section had its own deed restrictions, but the Meyerland Addition as a whole had no general deed restrictions that applied to all twenty-one sections. The lot owners of Section 4 adopted amended deed restrictions that apparently allowed them to change the deed restrictions so as to permit the sale of their property for non-residential uses.

MCIA sought to disqualify the attorney who represented Section 4, Jay Siskind. Siskind drafted the amended deed restrictions. In other suits, Siskind represented MCIA to enforce deed restrictions; the court in *Meyerland* does not indicate whether Siskind had ever represented MCIA in any suit to enforce Section 4's deed restrictions. MCIA argued that Siskind should be disqualified because he possessed "confidential information" that MCIA had given to him when Siskind formerly represented MCIA, and because Siskind appeared as a witness in the present suit. The *Meyerland* opinion does not clarify the basis of the MCIA argument, that is, whether MCIA argued that Siskind violated the attorney-client evidentiary privilege, an ethical duty, or both. The Court in *Meyerland* addressed the joint-client exception, which, as the court in *Brennan's* explained, applies to the attorney-client evidentiary privilege and not to the ethical duty. Since Siskind represented the Meyerland Addition and Section 4 jointly, the court concluded that no confidences existed and that Siskind's testimony was cumulative of other testimony given by MCIA witnesses and overruled MCIA's point of error.

We are not persuaded that *Meyerland* applies to this case. MCIA apparently relied on the attorney-client evidentiary privilege as the basis for its motion to disqualify; the *Meyerland* court focused on Siskind's testimony, which would be relevant to the evidentiary privilege and would be irrelevant to the ethical duty, because confidences in the ethical context may not be rebutted by proof. *Petroleum Wholesale, Inc.*, 751 S.W.2d at 299. Assuming MCIA asserted the ethical duty as a basis for disqualification, we are persuaded that, had the *Meyerland* court addressed that issue,

the *Meyerland* court would have found that argument to be without merit. In the ethical context, when determining whether an attorney is presumed to be using confidential information in an action against a former client, courts look at the present action to determine whether it is substantially related to the attorney's representation of his former client. *Hall*, 718 S.W.2d at 322. Although Siskind represented MCIA to enforce deed restrictions, nothing in the *Meyerland* opinion affirmatively shows that Siskind represented MCIA against Section 4 owners. Assuming Siskind had represented MCIA against Section 4 owners, nothing in the *Meyerland* opinion shows that Siskind's prior representation of MCIA involved the same facts or the same legal issues of *Meyerland*. We are not persuaded that Siskind's former and present representations were substantially related. For the reasons given above, we conclude that *Meyerland* is distinguishable.

 Whether a joint-client exception to the attorney-client privilege exists and whether Hoggard waived the attorney-client privilege by her deposition testimony go to the extent of the attorney-client privilege. They are not factors to be considered in evaluating ethical conduct. We emphasize, once again, that Misko is conclusively presumed to have obtained certain of Hoggard's confidences when he represented her in the underlying litigation against Spencer and Halliday. There is, under Canon 9, an appearance of a specifically identifiable impropriety in his continuing to represent a new client asserting identical claims against Hoggard. That violation of Canon 9 is independent of whatever privilege Hoggard might or might not be able to assert against discovery.

In a final argument made by Misko and the attorney ad litem, they assert that Hoggard will suffer no harm from Misko's representation of Jay, because they have agreed that, if they obtain a judgment in Jay's favor, they will not execute that judgment against Hoggard personally. They emphasize that everyone, and certainly Hoggard herself, wants what is best for

Jay. They point out that Stewart, acting on behalf of the Hoggards' insurance carrier and therefore representing Hoggard, is the attorney who actually filed this proceeding on behalf of Hoggard.

This argument is flawed. The argument seems to be that Hoggard has no legally cognizable interest in Jay's suit against her, because she really has nothing to lose—certainly no pecuniary interest—whatever the suit's outcome.[6] In short, Jay's suit against Hoggard, according to this line of reasoning, is not a real suit that need concern Hoggard. Far from justifying the trial court's denial of Hoggard's disqualification motion, however, this argument is actually all the more reason why it should have been granted. "[A] court has not only the power but the *duty* to insure that judicial proceedings remain truly adversary in nature." *Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988) (emphasis original). We seriously question whether the public's possible perception of impropriety will not be enflamed by a suit wherein the plaintiff and the defendant have agreed, before the suit starts, that the plaintiff will not enforce any judgment that he obtains.

Finally, Misko cites *Callaway v. Barber,* 760 S.W.2d 698 (Tex.App.—Corpus Christi 1988, writ pending), for the proposition that courts are not authorized "to engage in a presumption of impropriety and order an attorney to withdraw as counsel for a party against that party's wishes." *Id.* at 700; *see also NCNB,* 765 S.W.2d at 399. When the above quote is placed in the context of the facts of *Callaway,* we find that it has no bearing in the present case. In *Callaway,* an attorney represented three plaintiffs; subsequently, the attorney learned that one of the plaintiffs had an adverse interest to the other two plaintiffs. The attorney sought to withdraw from representing the one plaintiff and continue representing the other two plaintiffs. The trial court ordered the attorney to withdraw from representing all three plaintiffs. On appeal, the Corpus Christi Court of

Appeals held that the trial court erred in ordering the attorney to withdraw from representing the two plaintiffs, because no one objected to the attorney's continued representation. In essence, the court held that where no one complains of a conflict of interest, a court may not presume an impropriety and order an attorney to withdraw against his clients' will. *Cf. Ferguson,* 122 S.W.2d at 1081 (an objection that an attorney is disqualified by reason of his representing adverse interests is available only to those persons with whom the attorney in question has or has had an attorney-client relationship). In the present case, Hoggard has objected to Misko's representation of Jay; therefore, the present case is distinguishable from *Callaway.* Misko's reliance on *Callaway* is misplaced.

In any case, we have already acknowledged that we are not holding that any actual impropriety has occurred; a violation of Canon 9 consists only of the appearance of impropriety, not of an actual occurrence. In saying that Misko's continued representation of Jay violates Canon 9, we are not saying that Misko intends to divulge, or even has, any specific confidences from Hoggard. We are certainly not indulging in any presumption that any attorney before this Court in this proceeding has revealed any former client's confidences to a present client.

In summary, we hold that, under the facts of this case, the litigation in which Misko formerly represented Hoggard is substantially related to the litigation in which he now represents Hoggard's adversary, Jay—the two are in fact the same litigation. We hold that Misko cannot establish that there is no substantial relationship between the successive representations of Hoggard and Jay in the same litigation, merely because Misko has had co-counsel to whom he referred any claims pertaining to Hoggard's contributory negligence. We hold that Misko's possession of Hoggard's confidences, when he represented her, is conclusively presumed. While

---

6. Hoggard herself, speaking without any evident legal prompting, testified that she in fact does have something to lose. The prospect of having

a jury of your peers implicitly hold you as an unfit mother is unquestionably damaging.

Misko may not have committed any actual impropriety, he gives, as a matter of law, the appearance of a specifically identifiable impropriety, with the result that Canon 9 is violated. Therefore, the trial court clearly abused its discretion in denying Hoggard's motion to disqualify Misko from representing Jay's action against her. We conclude that, under the facts of this case, mandamus will lie. We decline to express any opinion on whether mandamus will generally lie to review any order denying a motion to disqualify, in the absence of a showing of an immediate and palpable harm. We hold only that, in this case, there has been a clear and direct violation of Canon 9 and that such a clear and direct violation is an immediate and palpable harm justifying the issuance of a writ of mandamus.

## JUDGE AGAINST WHOM MANDAMUS LIES

■ Hoggard names three judges as respondents, Judge Morris, Judge Snodgrass, and Judge Hoffman. Judge Morris is the permanent judge of the 101st District Court. Judge Snodgrass was the visiting judge who heard Hoggard's motion to disqualify. Judge Hoffman, another visiting judge, signed the order denying the motion to disqualify. To insure that Hoggard brought the writ of mandamus against the proper judge, she named all three as respondents.

Although this case involves three judges, it involves only one district court, the 101st District Court. Judge Snodgrass and Judge Hoffman, as visiting judges, acted on behalf of the 101st District Court and on behalf of Judge Morris, who is the permanent judge of the 101st District Court. Should mandamus issue, only Judge Morris has the authority to act on behalf of the 101st District Court. Judge Snodgrass and Judge Hoffman may no longer be assigned to the 101st District Court; consequently, although they had the authority to hear Hoggard's motion and sign the order, respectively, they may presently have no authority to act on behalf of the 101st District Court. Accordingly, should mandamus issue, we hold that it should issue against Judge Morris.

In Judge Morris's brief, he contends that mandamus does not lie against him because he could not have abused his discretion since he had no participation whatsoever in the order and has taken no position on the merits of the matter. We disagree. Because the visiting judge "sits for" the permanent judge, the rulings of the visiting judge are, in effect, the rulings of the permanent judge. As the permanent judge, Judge Morris is ultimately responsible for any order that issues from the 101st District Court. The visiting judges acted only at the request and pleasure of the permanent judge. Although the visiting judges were requested to assist in managing the court's heavy caseload, the referral of the disqualification motion to them did not absolve the permanent judge from the responsibility for the consequences of their rulings.

We are familiar with the rule that a writ of mandamus will not lie against a successor judge in the absence of a refusal by him to grant the relief the relator seeks. *State v. Olsen*, 163 Tex. 449, 360 S.W.2d 402, 403 (1962); *see Jampole v. Touchy*, 673 S.W.2d 569, 572 (Tex.1984). Because Judge Morris is not a successor judge, those cases do not apply. At all relevant times, Judge Morris was and still is the permanent judge of the 101st District Court.

We emphasize that we conditionally grant the writ of mandamus; we will not issue any writ without first giving the trial court an opportunity to act. We expressly acknowledge that Judge Morris committed no personal abuse of discretion. We emphasize, however, that Judge Morris is responsible for any action taken by visiting judges in his court.

## CONCLUSION

We conditionally grant Hoggard's petition for writ of mandamus. Judge Morris is directed to (1) sign an order vacating the order denying Hoggard's motion to disqualify Misko, and (2) enter an order granting Hoggard's motion to disqualify Misko. If

Judge Morris fails to follow the above directives, only then will writ issue.