**OCCIDENTAL CHEMICAL CORPORATION, et al.,
Relators,**

v.

**Honorable Eric BROWN, Judge of the 28th District Court of Nueces County, Texas, Respondent.**

**No. 13–94–173–CV.**

Court of Appeals of Texas,
Corpus Christi.

May 26, 1994.

---

Joe R. Greenhill, Bob E. Shannon, Joseph R. Knight, Baker & Botts, Austin, David R. McAtee, John R. Crews, Daniel S. York, Gibson, Dunn & Crutcher, Dallas, for relators.

Robert E. Brunkenhoefer, Jeannette Cantu–Bazar, Rose Vela, Steve T. Hastings, Douglas A. Allison, Alberto R. Huerta, Allison & Huerta, Corpus Christi, Malcolm C. Halbardier, San Antonio, Robert B. Waltman, Angela Neville, Waltman & Associates, Bryan, William R. Edwards, III, Michael G. Terry, Edwards & Terry, M.W. Meredith, Jr., Ben A. Donnell, Meredith, Donnell & Abernethy, Gregory Herrman, Herrman, Henley & Herrman, Robert C. Hilliard, Hilliard, Grillo & Munoz, Hubert L. Stone, Corpus Christi, for real parties in interest.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This mandamus action concerns the propriety of an order of the trial court disqualifying the law firm of Chaves, Gonzales & Rodriguez, L.L.P., (Chaves firm) from further representing the relator/defendants. The trial court found that a conflict of interest was created when the Chaves firm hired a secretary who had previously worked for a law firm that represents the plaintiffs. We conditionally grant the writ of mandamus.

Multiple plaintiffs sued the defendants[1] for personal injuries associated with an accidental release of butadiene gas near Robstown. Robert Brunkenhoefer's law firm represents several plaintiffs. Sandra Adame was employed by Robert Brunkenhoefer as a secretary and worked on matters related to the plaintiffs' case. It is undisputed that Adame gained knowledge of confidential matters while working at the Brunkenhoefer firm. After Adame left the Brunkenhoefer firm, she was employed on March 7, 1994, by the Chaves firm as a temporary secretary for Omar Rivero, one of the firm partners actively representing the defendants in the present litigation. Shortly after she was employed, Adame informed senior partner Doug Chaves that she had previously worked on the instant case while employed at the Brunkenhoefer firm. Chaves immediately admonished Adame not to reveal to anyone at the Chaves firm any matter regarding the case. In addition, Chaves informed the other attorneys in the firm of the situation and testified that no such information was obtained or communicated. Adame's sworn affidavit states that she did not divulge any confidences and only performed clerical tasks on the present litigation at the Chaves firm (such as typing deposition notices, coordinating deposition schedules, and the filing of papers). Adame worked for the Chaves firm until March 24, 1994.

The plaintiffs moved to disqualify the Chaves firm from further representing the defendants, contending that Adame's employment and work on the present case created a conflict of interest. After a hearing, and based on the essentially undisputed facts recited above, the trial court entered an order disqualifying the Chaves firm. The trial court found that the sharing of client confidences is conclusively presumed when a *lawyer* works on a case at one law firm and then transfers to a law firm that represents an adverse party. The trial court found, as a

---

1. Occidental Chemical Corporation and Oxy Petrochemicals, Inc., John O. Foster, and Charles W. Tredway.

matter of law, that the same conclusive presumption applies to a *nonlawyer* who works on a case at one law firm and then transfers to a law firm that represents an adverse party. The trial court, however, did not find that any client confidences were actually shared with the Chaves firm and we find no evidence in the record of such sharing.

■ Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Specifically, mandamus has been consistently accepted as an appropriate method to review the improper disqualification of counsel. *See Spears v. Fourth Court of Appeals,* 797 S.W.2d 654 (Tex.1990); *Ayres v. Canales,* 790 S.W.2d 554 (Tex.1990); *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398 (Tex.1989). Disqualification is a severe remedy which results in immediate and palpable harm, disrupts the trial court proceedings, and deprives a party of the right to have counsel of choice. *See Hoggard v. Snodgrass,* 770 S.W.2d 577, 581 (Tex.App.—Dallas 1989, orig. proceeding). Therefore, disqualification of counsel generally renders the remedy by appeal inadequate. *Coker,* 765 S.W.2d at 400.

■ While the Texas Disciplinary Rules of Professional Conduct[2] are not controlling as standards governing motions to disqualify, they have been viewed by the courts as guidelines that articulate considerations relevant to the merits of such motions. *Spears,* 797 S.W.2d at 656. Because disqualification is a severe remedy, the courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. Thus, the burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules, and mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. *Id.*

In the present case, if Adame was a lawyer who had worked on the plaintiff's case at the Brunkenhoefer firm and then transferred to the Chaves firm, the disciplinary rules would clearly require disqualification. Rule 1.06(a), (f) generally prohibits a lawyer, as well as other lawyers within his or her firm at the time, from representing opposing parties in the same litigation. In addition, Rule 1.09(a) (1991), covering conflicts with a former client, prohibits a lawyer who has personally represented a particular client from subsequently representing an adverse party on the same matter. Rule 1.09(b) further extends the prohibition to any other lawyers with whose firm the disqualified lawyer becomes a member or becomes associated.

The crux of the automatic disqualification under Rule 1.09(a) depends upon the original creation of a personal attorney-client relationship between the lawyer and his former client. *See* Rule 1.09 cmt. 2. From that attorney-client relationship, two presumptions arise: 1) that confidences have been shared with an attorney actively handling the client's case, and 2) that the attorney will in turn share those same confidences with other attorneys in any firm with which he or she practices. *See Coker,* 765 S.W.2d at 400; *Insurance Co. of N. Am. v. Westergren,* 794 S.W.2d 812, 814–15 (Tex.App.—Corpus Christi 1990, orig. proceeding); *Howard v. Texas Dep't of Human Services,* 791 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1990, no writ); *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 299 (Tex.App.—Dallas 1988, orig. proceeding). The first presumption is irrelevant in this case, since it is undisputed that Adame has knowledge of client confidences. Therefore, we concentrate on the second presumption.

The presumed sharing of information arises from the natural interplay among lawyers who practice together. *Petroleum Wholesale,* 751 S.W.2d at 299. The *Petroleum Wholesale* court based its analysis of this second presumption on the resulting appear-

---

**2.** All references to the Disciplinary Rules refer to TEX.DISCIPLINARY R.PROF.CONDUCT 1.01–8.05 (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9).

ance of professional impropriety[3] and on the general lack of any independent means to verify that no such confidences have been shared. The Dallas Court of Appeals concluded that it did not matter what safeguards, or "chinese walls," the attorneys with the same firm claimed that they had erected against participation or the disclosure of confidences by the disqualified lawyer, because these facts remained solely within the collective knowledge of the law firm and its employees and did not dissipate the public perception of impropriety. *Id.* at 300–301.

The conclusive presumption suggested by both the disciplinary rules and the cases interpreting them is, thus, based on a policy determination that it is generally more effective, efficient and just to the former client to assume that his confidences have been shared. To do otherwise would require a case-by-case inquiry and the only persons who would know whether confidences were shared would be the very lawyers that the former client would be trying to disqualify. Additionally, these lawyers would have a substantial interest in denying that any such confidences were shared. Rather than put the former client in this difficult position, it is assumed that his confidences will be shared generally with every other lawyer in the firm. The rules are thus simple and straightforward, breach is relatively easy to prove, and the remedy of disqualification is clear.

In the present case, the plaintiffs argue that the sharing of client confidences should be conclusively presumed when a nonlawyer employee works on a particular case with one law firm and then transfers to a law firm that represents an adverse party. The plaintiffs contend that the same considerations which disqualify lawyers and their firms should be applied to nonlawyer employees of a law firm.

The disciplinary rules do not directly address the present situation. Specifically, there is no parallel provision to Rules 1.06 or 1.09 which cover conflicts of interest caused by the prior work of nonlawyer employees. Instead, the disciplinary rules tend to regulate the conduct of nonlawyer employees only in an indirect and non-specific manner through vague admonitions to the lawyers that employ them. Rule 5.03(a) generally requires a supervising lawyer to "make reasonable efforts to ensure that the [nonlawyer employee's] conduct is compatible with the professional obligations of the lawyer." In addition, the supervising lawyer would violate Rule 5.03(b)(1) if he ordered, encouraged, or permitted the nonlawyer employee to engage in conduct that violates the disciplinary rules. In the present case, the Chaves firm would have violated this rule if it ordered, encouraged, or permitted Adame to reveal the client confidences in question in the present action.

█ The considerations which are used to disqualify lawyers and their firms should be used as guidelines for the disqualification of nonlawyer employees of a law firm. The nature of the legal profession generally requires lawyers to hire a support staff that is more or less privy to the confidences of the lawyer and expected to assist the lawyer in carrying out his duties in the representation of his clients. Within the confines of the law firm and its support staff, information is freely shared, and strategy and ideas may be developed. However, because the present disciplinary rules do not suggest that the conclusive presumption that applies to lawyers also applies to nonlawyer employees, we decline to so hold.

█ It appears to us that the determination of whether nonlawyer employees have shared former client confidences must be evaluated on a case-by-case basis. Since the only persons who would generally know whether client confidences have been shared are the very lawyers whose disqualification is

---

3. Although the present disciplinary rules have no counterpart to the prior prohibition against even the appearance of impropriety, *see* State Bar Rules art. X, § 9, Canon 9 (Texas Code of Professional Responsibility) (repealed effective January 1, 1990), subsequent cases continue to justify these same presumptions under the new rules on the basis of the appearance of impropriety. *See Insurance Co. of N. Am. v. Westergren*, 794 S.W.2d 812, 814–15 (Tex.App.—Corpus Christi 1990, orig. proceeding); *Howard v. Texas Dep't of Human Services*, 791 S.W.2d 313, 315 (Tex. App.—Corpus Christi 1990, no writ).

being sought, it appears to us that a rebuttable presumption should arise that such confidences have been shared by the nonlawyer employee. We, therefore, hold that a rebuttable presumption arises that the nonlawyer employee has shared confidential information with the new employer.

■■■ A rebuttable presumption is a rule which draws a particular inference as to the existence of one fact, not actually known, arising from its usual connection with other particular facts which are known or proved. *Beck v. Sheppard*, 566 S.W.2d 569, 571 (Tex. 1978). In the absence of evidence to the contrary, a rebuttable presumption has the force of a rule of law. The presumption, however, is not evidence and it vanishes when opposing evidence is introduced. *See Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987); *Sudduth v. Commonwealth County Mut. Ins. Co.*, 454 S.W.2d 196, 198 (Tex. 1970).

■■■ Once the presumption arises, it must be rebutted by competent evidence that the nonlawyer employee has not shared any confidential information with the new firm. If the presumption is rebutted, the new law firm should not be disqualified until the adverse party has presented some evidence that his confidences were in fact improperly revealed or used against him by the nonlawyer employee. *See Cliff*, 724 S.W.2d at 780.

■■■ In the present case, we know that Adame gained knowledge of confidential matters when she worked for the Brunkenhoefer firm and that she subsequently worked for the Chaves firm at a time when the Chaves firm represented an adverse party. We hold that a rebuttable presumption arose from these facts that Adame shared confidential information with the Chaves firm.

The presumption, however, was rebutted by the Chaves firm. The Chaves firm submitted Adame's sworn affidavit which stated that she had not shared any confidential information with the Chaves firm. Adame's employment with the Chaves firm was procured by an agency that supplies temporary employees on request. Her employment with the firm was temporary, only 18 days, and during that period she worked for the firm only 14 working days. That Adame had previously worked for the Brunkenhoefer firm was mere happenstance and unknown to the Chaves firm when she was hired as a temporary employee. In addition, Doug Chaves testified that he admonished Adame not to reveal to anyone at the Chaves firm any matter regarding the case and that no such information was obtained or communicated. We hold that the presumption that Adame shared confidential information with the Chaves firm disappeared when the firm presented evidence to the contrary. Plaintiffs produced no evidence to controvert this testimony or to show that any confidences were revealed during Adame's employment with the Chaves firm.

Under these circumstances, we hold that the trial court abused its discretion by applying a conclusive presumption that Adame shared confidential information with the Chaves firm and by disqualifying the firm from further participation in the present case.

We conditionally grant a writ of mandamus directing the trial court to vacate its order disqualifying the Chaves firm from representing the relators in the present case. However, the writ will not issue unless the trial court fails to comply with this opinion.