Efren ARZATE, Appellant,

v.

Lloyd HAYES, Appellee.

No. 08–95–00139–CV.

Court of Appeals of Texas,
El Paso.

Jan. 18, 1996.

Rehearing Overruled Feb. 28, 1996.

 

Joe A. Spencer, Jr., El Paso, for appellant.

Larry W. Hicks, Hadley A. Huchton, Hicks & Associates, El Paso, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

Efren Arzate, Appellant, appeals from a take-nothing judgment entered in favor of Lloyd Hayes, Appellee, following a jury trial. By a single point of error, Arzate challenges the trial court's denial of a motion to disqualify opposing counsel. We affirm.

### FACTS

Attorney Joe Spencer began representing Arzate in February of 1991 in connection with a medical malpractice claim. Lorena Tabares, a legal assistant, began working for Spencer in July of 1991. While so employed, Tabares worked extensively on the Arzate case. On February 1, 1993, Spencer filed a medical malpractice suit against Hayes. In September of that year, Tabares left employment with Spencer and began working for Hicks and Associates (Hicks), the firm defending Hayes in the malpractice suit. Arzate did not immediately file a motion to disqualify Hicks based upon Tabares's employment. Instead, he filed the motion on October 24, 1994, just forty-eight days before trial began. After hearing, the trial court denied the motion to disqualify, and the case proceeded to a jury trial on December 12, 1994. The jury found against Arzate and the trial court entered a take-nothing judgment.

#### Motion to Disqualify

Arzate contends that the trial court abused its discretion in denying the motion to disqualify Hicks because the evidence showed that a threat of disclosure existed prior to trial. Hayes responds that: (1) this Court lacks jurisdiction because Arzate failed to perfect this appeal; (2) Arzate waived error by failing to challenge the trial court's decision by filing a petition for writ of mandamus; (3) Arzate waived error by not filing

the motion to disqualify in a timely manner; and (4) the evidence rebutted the presumption of shared confidences, and therefore the trial court did not abuse his discretion in refusing to disqualify the firm.

### Jurisdiction of this Court

We first address the assertion that Arzate failed to properly perfect this appeal. The trial court signed the judgment on January 5, 1995, and Arzate timely filed a motion for new trial on February 3. Therefore, the appeal was due to be perfected on or before April 5. TEX.R.APP.P. 41(a)(1). Arzate filed a notice of appeal on March 22, but he did not file his cost bond on appeal until April 6. Arzate did not file a motion for extension of time in which to perfect appeal as permitted by TEX.R.APP.P. 41(a)(2). Hayes argues that because a notice of appeal is insufficient to perfect appeal and Arzate filed the cost bond one day late, this Court lacks jurisdiction. This is incorrect. By filing the notice of appeal, Arzate made a timely and *bona fide* attempt to invoke the jurisdiction of this Court. He subsequently cured the defect by filing a cost bond on April 6. *Linwood v. NCNB Texas,* 885 S.W.2d 102, 103 (Tex.1994)

(appellant made a bona fide attempt to invoke appellate jurisdiction by timely filing the notice of appeal; this defective attempt was cured when the cost bond was later filed, although untimely); *C.F. v. State,* 897 S.W.2d 464, 468 (Tex.App.—El Paso 1995, no writ) (juvenile made a bona fide attempt to invoke appellate jurisdiction by filing notice of appeal; this defect was cured when juvenile later filed an affidavit of inability to pay appellate expenses). Accordingly, the Court has jurisdiction to hear this appeal.

### Disqualification of Legal Assistant

Although Hicks raises two waiver issues in response to this appeal, we feel that the trial court's decision is fully sustainable on the merits, and therefore we need not address those issues.[1] This Court reviews the trial court's denial of Arzate's motion to disqualify under the abuse of discretion standard. *See Henderson v. Floyd,* 891 S.W.2d 252 (Tex.1995); *Coker,* 765 S.W.2d at 400; *HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 629 (Tex.App.—Austin 1992, writ denied). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case

---

1. One of Hayes's assertions that waiver occurred is unique and perhaps worth comment. He claims Arzate waived error by failing to seek mandamus review of the trial court's refusal to disqualify. He cites no cases holding that review of a disqualification issue is unavailable on direct appeal. Instead, Hayes cites the general rule that mandamus will not issue where there is an adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992), and reasons that because the granting or denial of a motion to disqualify may be reviewed by mandamus, review must not be available on direct appeal.

Hayes is correct that mandamus has been consistently accepted as an appropriate method to review improper disqualification of counsel. *Occidental Chemical Corp. v. Brown,* 877 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1994), *vacated by Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 467 (Tex.1994, orig. proceeding); *see Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831 (Tex.1994); *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654 (Tex.1990); *Ayres v. Canales,* 790 S.W.2d 554 (Tex.1990); *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398 (Tex.1989). Mandamus relief is available because disqualification is a severe remedy which results in immediate and palpable harm, disrupts the trial court proceedings, and deprives a party of the right to

have counsel of choice. *Occidental Chemical Corp.,* 877 S.W.2d at 30; *see Hoggard v. Snodgrass,* 770 S.W.2d 577, 581 (Tex.App.—Dallas 1989, orig. proceeding). Therefore, disqualification of counsel generally renders the remedy by appeal inadequate. *Coker,* 765 S.W.2d at 400. This general inadequacy of direct appellate review does not mean, however, that such review is unavailable if mandamus is not sought. To the contrary, disqualification issues are subject to review on direct appeal. *See e.g., Metropolitan Life Insurance Company v. Syntek Finance Corporation,* 881 S.W.2d 319, 321 (Tex.1994); *Hall v. Birchfield,* 718 S.W.2d 313, 322 n. 1 (Tex.App.—Texarkana 1986), *rev'd on other grounds,* 747 S.W.2d 361 (Tex.1987) (noting that the filing of a writ of mandamus would be a *better* procedure than awaiting the outcome of the main trial because the disqualification issue should not be allowed to interfere with the fair disposition of the suit; nevertheless, the court of appeals reviewed the disqualification complaint raised in that case). Moreover, this Court believes it would be a dangerous precedent to rule that failure to seek mandamus waives appellate points. Mandamus is an extraordinary remedy to be sought only in extraordinary circumstances, and careful counsel should not feel compelled to request mandamus relief merely to preserve appellate issues.

for the trial court's action. *C.F.*, 897 S.W.2d at 473; *A.P. Keller Development, Inc. v. One Jackson Place, Ltd.*, 890 S.W.2d 502, 505 (Tex.App.—El Paso 1994, no writ). Instead, it is a question of whether the trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Metropolitan Life Insurance*, 881 S.W.2d at 321; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *C.F.*, 897 S.W.2d at 473–74; *A.P. Keller Development*, 890 S.W.2d at 505. The fact that a trial judge may decide a matter within his or her discretion in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d at 242; *C.F.*, 897 S.W.2d at 473–74.

▪ In *Phoenix Founders*, the Supreme Court recognized a rebuttable presumption that a nonlawyer who switches sides in ongoing litigation, after having gained confidential information at the first firm, will share the information with members of the new firm. *Phoenix Founders*, 887 S.W.2d at 835.[2] Client confidences may be adequately safeguarded if a firm hiring a legal assistant from another firm takes appropriate steps in compliance with the Disciplinary Rules. *Id.* Specifically, the newly hired legal assistant should be cautioned not to disclose any information relating to the representation of a client of the former employer. *Phoenix Founders*, 887 S.W.2d at 835. The paralegal should also be instructed not to work on any matter on which he or she worked during the prior employment, or regarding which he or she has information relating to the former employer's representation. *Id.* Additionally, the firm should take other reasonable steps to ensure that the legal assistant does not work in connection with matters on which he or she worked during the prior employment, absent client consent after consultation. *Id.* Each of these precautions tends to reduce the danger that the legal assistant might share confidential information with members of the new firm. The presumption

that confidential information has been disclosed is rebutted upon a showing that sufficient precautions have been taken by the new firm to guard against any such disclosure. *Id.*

▪ The trial court examines the circumstances of the paralegal's employment at the new firm to determine whether the practical effect of formal screening has been achieved. *See id.* at 836. In deciding whether the screening procedures adopted by the new law firm are sufficient to preclude the firm's disqualification, the trial court should consider the substantiality of the relationship between the former and current matters, time elapsed between the matters, size of the firm, the number of individuals presumed to have confidential information, the nature of their involvement in the former matter, and the timing and features of any measures taken to reduce the danger of disclosure. *Id.* The ultimate question in weighing these factors is whether the new firm has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level. *Id.* As with any disqualification motion, the trial court must adhere to an exacting standard so as to discourage any use of a disqualification motion as a dilatory tactic. *Id.; see Spears*, 797 S.W.2d at 656.

▪ The test for disqualification is met by demonstrating a genuine threat of disclosure, not an actual materialized disclosure. *Grant*, 888 S.W.2d at 467, *citing Home Ins. Co. v. Marsh*, 790 S.W.2d 749, 753 (Tex.App.—El Paso 1990, orig. proceeding). This rule encourages institutional measures to guard against any disclosure, whether deliberate or inadvertent. *Grant*, 888 S.W.2d at 467. Moreover, any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification. *Id.*

---

**2.** In the same case, the Court also recognized that a paralegal who has actually worked on a case must be subject to a conclusive presumption that confidences and secrets were imparted during the course of the paralegal's work on the case. *Phoenix Founders*, 887 S.W.2d at 834. In the instant case, the parties do not dispute that client confidences were imparted to Tabares.

 Here, the evidence reflects that Tabares conducted interviews of Arzate and his wife, drafted correspondence, pleadings and discovery requests, and scheduled depositions. Spencer maintained in his testimony that he had discussed trial strategy with Tabares, but Tabares denied this. When Tabares interviewed with Terry Hammond, a lawyer in the Hicks firm, she informed him that she had worked on the Arzate case while employed with Spencer. Hammond instructed Tabares not to discuss the Arzate case with anyone at Hicks or discuss any confidential information she had received by virtue of working on the case. He further instructed her not to work on the case. Tabares worked for Hammond until late October of 1993. She then began working for Jim Arkell, another lawyer in the firm, who also instructed her not to disclose any information concerning the Arzate case. Like Hammond, Arkell prohibited Tabares from working on the file. Consistent with the instructions she had been given, Tabares did not disclose anything concerning the Arzate case or perform any work on it.

The first two factors which the trial court should have considered are the substantiality of the relationship between the former and current matters and the time elapsed between the matters. The fact that the present case involves representation of adverse parties in the same proceeding, rather than two separate proceedings, increases the danger that an improper disclosure may have occurred. *Phoenix Founders*, 887 S.W.2d at 836; *see HECI Exploration*, 843 S.W.2d at 628. Concerning the next three factors, Hicks offered no evidence concerning the size of the firm, its organizational structure, or the number of individuals presumed to have confidential information about the matter in question. With regard to the final factor, measures taken to prevent disclosure, the evidence reflects that Hammond and Arkell carefully followed the measures suggested in *Phoenix Founders* by cautioning Tabares not to disclose any information relating to the representation of Arzate or work on the file. Other than these instructions, there is no evidence that Tabares's supervising attorneys or the Hicks firm took any additional steps to ensure that she did not work on the

Arzate case. Both Tabares and Arkell said, however, that she never worked on the case.

Even though Tabares's testimony that she did not disclose any confidential information does not rebut the presumption, *see Grant*, 888 S.W.2d at 467, the evidence taken as a whole supports a conclusion that the precautionary measures taken by the firm were sufficient to guard against any disclosure of confidences. *See Phoenix Founders*, 887 S.W.2d at 836. No abuse of discretion is shown.

### CONCLUSION

We overrule Arzate's sole point of error. The trial court's judgment is affirmed.